[No. 11763. Department Two. August 25, 1914.]

KNEELAND INVESTMENT COMPANY, *Respondent*, v.
F. C. BERENDES, *Appellant*.[1]

CORPORATIONS—ACTIONS—BY PLEDGEE OF STOCK—CONDITION PRECEDENT—SEEKING REDRESS THROUGH OFFICERS. A pledgee of all of the stock of a corporation may maintain an action to cancel a subsequent mortgage upon the corporate property without first seeking redress through the corporation, the rule governing stockholders in such a case having no application to a pledgee of stock; since the pledgee, so far as control of the corporation is concerned, is a stranger thereto.

SAME — CONDITION PRECEDENT — WAIVER. To first seek redress through the corporation is not a condition precedent in an action against the corporation by a pledgee of the stock to cancel a subsequent mortgage upon the assets of the corporation, where it appears that a request upon the officers of the corporation to bring the action would have been denied.

APPEAL — REVIEW — PLEADINGS — AMENDMENTS CONSIDERED MADE. Where the complaint, in an action by the pledgee of corporate stock to cancel a subsequent mortgage upon the assets of the corporation, failed to allege that a request upon the officers to bring the action would have been denied, but it so appeared in the evidence, the complaint will be deemed amended on appeal, under Rem. & Bal. Code, § 1752, requiring the court to treat the complaint as amended so as to conform to the proofs.

CORPORATIONS—ACTIONS—RIGHTS OF PLEDGEE. The filing of a mortgage upon the assets of a corporation, after a pledge of all the

[1]Reported in 142 Pac. 869.

stock to secure a note given to the owner as part payment of the purchase price, gives an immediate right of action to the pledgee to cancel the mortgage, as it impairs the market value of the stock, hence the complaint is not defective in failing to allege that the mortgagee intended, or was threatening, to foreclose his mortgage.

APPEAL—REVIEW—AMENDMENTS TO CONFORM TO PROOF. Failure of a corporation to allege payment of its last annual license fee in its complaint is an amendable defect, the proofs showing payment of the fee, under Rem. & Bal. Code, § 1752, requiring the court, on appeal, to treat the complaint as amended to correspond to the fact.

CORPORATIONS — STOCK — SALE OF—INVALID MORTGAGE—CANCELLATION—CONDITION PRECEDENT—TENDER. Where the owner of all the stock of a corporation sold the stock, receiving the first payment in cash, and a note secured by a pledge of the stock as security for the balance of the purchase price, a third party who advanced to the purchaser of the stock the money for the first payment under an agreement that he was to be secured by a lien on all the assets of the corporation purchased, has no remedy against the pledgee, who was not a party to such agreement and who may sue to cancel the mortgage given the third party, since it affected the pledgee's security; and it is not a condition precedent to such action that the mortgagee's advance was not first repaid by the pledgee, his sole remedy being against the parties who defrauded him.

SAME—FORECLOSURE OF PLEDGE—RIGHTS OF PLEDGEE. In such a case, the fact that the pledgee, subsequent to institution of its action to cancel the mortgage, obtained a decree foreclosing the lien of its pledge, under which it purchased the stock for the full amount of its demand, would not alter its position from that of pledgee to that of stockholder in the corporation, and hence destroy its right to relief as a pledgee of the stock, but its right to a cancellation of the mortgage is not affected thereby, the mortgage being an unwarranted invasion of its property rights.

EVIDENCE — DOCUMENTARY EVIDENCE — AUTHENTICATION OF CORPORATE SEAL. The admission in evidence of a stock certificate cannot be assigned as error in that the authenticity of the seal thereon was not proven, where the evidence clearly showed that the certificate bore a seal purporting to be the seal of the company, and that it was issued thereby, and was treated by the company, the officers thereof, and by the officers of a corporation to which it was pledged, as the stock of the company.

SAME—BEST AND SECONDARY EVIDENCE—OFFICIAL CAPACITY OF PARTIES. The admission of testimony of a party that he and another were duly elected and acting officers of a corporation, is not error, on the ground that it was not the best evidence and that the facts

could only be shown by the minutes of the meeting at which the election took place, where it was shown that such minutes had actually been kept, but were lost, and that diligent search had failed to locate them; since if deemed secondary evidence, a proper ground was laid for its admission.

CORPORATIONS—OFFICERS—COMPETENCY—STOCK HELD IN TRUST. A holding of stock in trust for parties is sufficient to enable them to qualify as officers of the corporation.

Appeal from a judgment of the superior court for Mason county, Mitchell, J., entered November 15, 1913, upon findings in favor of the plaintiff, in an action to cancel a mortgage. Affirmed.

*Moore, Wardall, Wardall & Martin*, for appellant.
*Frank C. Owings* and *Thos. L. O'Leary*, for respondent.

FULLERTON, J.—This is an action brought by the Kneeland Investment Company against Joseph E. Wickstrom, The Shelton Electric Company, and F. C. Berendes, to cancel a mortgage given by the Shelton Electric Company to Berendes. From the record, it appears that the Shelton Electric Company is a corporation having a capital stock of twenty thousand dollars, divided into two hundred shares of the par value of one hundred dollars each. On February 21, 1912, these shares were owned by the Kneeland Investment Company, Delia F. Kneeland, and J. T. Orth; the investment company owning 190 shares, Kneeland 5 shares, and Orth 5 shares. On that day, the owners of the shares of stock sold the same to the defendant Joseph E. Wickstrom for the consideration of $15,000, one-half of which was paid in cash at the time of the sale, and one year given in which to pay the remainder. For the unpaid part of the purchase price, Wickstrom gave to the Kneeland Investment Company his promissory note, and secured the same by pledging to that company the shares of stock purchased by him. At the time of the transfer, Wickstrom was president of a corporation known as the West Coast Power Company, and the cash

payment was made from the funds of that company, which were acquired through a loan made it by Berendes. On August 6, 1912, the Shelton Electric Company executed a mortgage upon all of its property to Berendes, to secure the sum of $7,500, theretofore loaned by Berendes to the West Coast Power Company, and which was used in making the cash payment. It is this mortgage that this action is brought to cancel. Judgment went in favor of the Kneeland Investment Company, and Berendes appeals.

The appellant first assigns error on the order of the court overruling his demurrer to the complaint. Four principal contentions are made under this head, the first of which is that it is not alleged in the complaint that the respondent made any attempt to have the wrong which it sues to correct remedied by officers or trustees of the corporation prior to the institution of the suit. The rule which requires a stockholder in a corporation to seek redress for wrongs, committed against his interests by the officers of the corporation, through the corporation itself, before he will be permitted to maintain an action in the courts therefor, is cited in support of the contention. But while the rule itself is well established, we think it has no application to the facts here presented. The respondent was neither a creditor nor a stockholder in the corporation. The obligation owing it was the obligation of a third person, not the obligation of the corporation. And while it held all of the capital stock of the corporation, it held it in pledge, merely, not in such manner as gave it the right to exercise a voice in the conduct and management of the corporation. In so far as the control of the corporation is concerned, the respondent was a stranger thereto. It, therefore, has the same rights with reference to wrongs committed against it that any stranger to the corporation would have, and is not compelled to seek redress, in the first instance, through the corporation.

This rule was applied by the supreme court of Minnesota in the case of *Baldwin v. Canfield*, 26 Minn. 43, 1 N. W. 261,

276, and by the supreme court of Georgia in *Andrews Co. v. National Bank of Columbus*, 129 Ga. 53, 58 S. E. 633, 121 Am. St. 186. In the former case it was said:

"It is also contended by the defendant's counsel that the plaintiffs have no standing in court, because a stockholder, as such, could not sustain an action of this kind. It is an answer to this to say that, as remarked by the counsel in another part of his brief, the plaintiffs, though they hold the stock, are not stockholders, but pledgees merely, and therefore they cannot exercise the control over the association which stockholders can. What the stockholders may compel the association to do, they cannot compel it to do. They cannot, therefore, be required to act through the association, but may bring an action on their own account, and in their own names, to protect their rights and interest as pledgees."

But if it were conceded that the pledgee stood in the shoes of the pledgor of the stock, and was subordinated to the rights of the pledgor with reference to the maintenance of an action, such as the one at bar, there is another principle on which the order in question may rest. There is an exception to the rule contended for by counsel as well settled as the rule itself, namely, that, where it appears from the allegations and proofs that the making of a request upon the officers of the corporation to bring the appropriate action would be useless, the requirement is dispensed with. In this case, while it was not specifically alleged in the complaint that such a request would have been denied, it abundantly so appears in the evidence. The defect in the complaint in this particular was, therefore, an amendable defect, and at this stage of the proceedings we would be required, in virtue of the statute, to treat the complaint as amended so as to conform to the fact. Rem. & Bal. Code, § 1752 (P. C. 81 § 1255).

The second contention that the complaint is fatally defective, is founded on the fact that it is not alleged that the mortgagee intended to, or was threatening to, foreclose his mortgage. But the mortgage appeared valid on its face, and proof of extrinsic circumstances was required to show its in-

validity.  As such, it materially impaired the value of the shares of stock the respondent held in pledge, preventing their transfer for their actual value.  A right of action, therefore, accrued upon the filing of the mortgage, and an action begun before the holder of the mortgage attempted to enforce it could not be premature.

With reference to the third contention, counsel say:

"It was averred that appellant Berendes advanced the sum of $7,500 to Wickstrom with which to make the first payment on the stock and that it had received the same, but it was not shown that appellant took the mortgage with notice of respondent's pledge or knew that the money had not been properly applied.  Before respondent asks equity to set aside the mortgage for want of consideration it should first do equity by tendering back our money.

"This court, in the case of *Spokane v. Amsterdamsch, etc.,* 22 Wash. 173, held that no duty devolves upon the mortgagee to see to the application of its loan beyond the payment to its mortgagor, and a shareholder of the corporation or pledgee who has received or partaken of the fruit of such illegal distribution cannot reasonably invoke equity to restore the property, when he has a part of the money received for the property.

"In the case at bar, respondents received our money representing for all practical purposes a distribution of part of the capital of the Shelton Company among its shareholders, although as a matter of fact respondent was the beneficial owner of the Shelton Company's assets by reason of its being the owner of its capital stock."

If we have correctly gathered the meaning of counsel, they here assume that the loan made by the appellant to the corporation represented by Wickstrom, and used by him in making the cash payment on the purchase price of the stock of Shelton Electric Company, was in some manner an advancement of money for the use of that corporation, and was by the directors thereof misapplied.  If such be counsel's meaning, we cannot accept it as a correct statement of the facts in the premises.  The loan to the West Coast Power

Company made by the appellant was in no sense a loan to
or the advancement to the use of the Shelton Electric Com-
pany. The most that can be claimed is that it was loaned
for the purpose of purchasing the stock of that company,
and that the appellant believed that he would be secured in
the sum loaned in some manner after the purchase of such
stock. But the respondent was in no way a party to that
understanding; indeed, the evidence is to the effect that it
had no knowledge of the source from which the money came
until after the completion of the transaction. To it, the
transaction was not other than an ordinary sale, and no
equity intervened by which it was obligated to return the
money to the appellant before it would seek a cancellation of
a mortgage wrongfully given by the Shelton Electric Com-
pany which injuriously affected its security for the unpaid
purchase price of the stock. The complaint, therefore, is not
faulty in that it did not plead a proffer to return the money,
or that there was no tender of the same into court.

The fourth contention is that there was no allegation in
the complaint that the respondent had paid to the state its
last annual license fee. This objection to the complaint was
not called specifically to the lower court's attention, and for
that reason, doubtless, no amendment of the pleadings in that
particular was required. The proofs, however, show that the
fee was paid, and that no incapacity on the part of the re-
spondent to sue existed in that particular. The defect was,
therefore, amendable, and, as we have before stated, since the
fact was shown to exist, we are required to treat the complaint
as amended to correspond to the fact.

The appellant, in his answer to the complaint, set up two
separate affirmative defenses. To these, demurrers were in-
terposed by the respondent, which the court sustained. The
second and third assignments of error are based on the rulings
sustaining the demurrer. The nature of the first affirmative
defense can be best stated by setting it forth at length. It
is as follows:

"For a first affirmative defense defendant F. C. Berendes alleges:

"That the West Coast Power Company is a corporation organized and existing under and by virtue of the laws of the state of Washington with its principal office and place of business at the city of Seattle, King county, state of Washington; that on the 20th day of February, 1912, this defendant agreed to and with the said West Coast Power Company to advance the sum of Seven thousand five hundred dollars ($7,500) in cash for the purpose of enabling the said West Coast Power Company to purchase the property, plant and assets of the Shelton Electric Company, it being then and there agreed that this defendant should be secured for the sum so advanced by a first lien upon the property, plant and assets of said Shelton Electric Company so to be purchased with said money; that in pursuance to said agreement he delivered to the West Coast Power Company said sum of Seven thousand five hundred dollars ($7,500) to enable it to make the purchase aforesaid; that defendant Joseph E. Wickstrom was then and there and at all times since has been president of the West Coast Power Company; that said Joseph E. Wickstrom issued a check duly countersigned by the treasurer of said company for the said sum of Seven thousand five hundred dollars ($7,500) so advanced and delivered the same on the 21st of February 1912 to the Kneeland Investment Company, plaintiff herein, and received assignment of certain stock certificates representing all of the capital stock of the Shelton Electric Company in the name of Joseph E. Wickstrom Co., a corporation, and said shares were transferred upon the books of said Shelton Electric Company to the said Joseph E. Wickstrom Co., at the instance of the plaintiff, and thereafter the said 197 shares of said stock were transferred by the said Joseph E. Wickstrom Co. to the West Coast Power Company same being all of the stock of the said Shelton Electric Company except three (3) shares held by the trustees thereof, each retaining one share of the same; that the said West Coast Power Company was the real party in interest and became the equitable owner of all of the stock of the said Shelton Electric Company at the time of the purchase of said stock from the plaintiff, furnishing all the money that was paid by said Wickstrom, the president and managing officer of said West Coast Power Co. to said plain-

tiff, the title to said stock having been transferred to and taken in the name of the Joseph E. Wickstrom Co. merely as a matter of convenience, said stock and the whole thereof being in the actual ownership of said West Coast Power Company. That on or about the 1st day of August, 1912, for the purpose of carrying out the said agreement and securing this defendant for the money so advanced by him the said Shelton Electric Company by unanimous vote of its stockholders and trustees authorized the execution of the mortgage mentioned in plaintiffs complaint and said mortgage was thereupon made, executed and delivered and placed of record to and for the use and benefit of the defendant F. C. Berendes for money advanced as aforesaid; that the said defendant Berendes accepted the said mortgage and note accompanying the same in good faith without notice or any knowledge whatever of any claim, right, lien or interest of the plaintiff herein in or to the stock or property of the Shelton Electric Company and that this defendant was thereby induced to accept the said mortgage and extend credit and further time for the repayment of the money theretofore advanced by him; that the plaintiff herein has wholly failed and neglected to cause to be recorded any notice of the pledge of said alleged stock mentioned in said complaint either upon the books of the company or the records of Mason County, Washington, wherein the property of said defendant corporation is situated; that plaintiff corporation well knew at the time that it dealt with defendant Wickstrom that the said Wickstrom was acting for and on behalf of the West Coast Power Company as an official thereof. That defendant Berendes in advancing said sum of Seven thousand five hundred dollars ($7,500) did so wholly upon the faith and security of the property to be purchased and not upon the credit of the West Coast Power Company; that said company had no property upon which to base a credit and outside of said stock had or has no tangible property upon which execution can be levied; that if said mortgage be adjudged void, said defendant will lose the entire sum he advanced, to wit: the sum of Seven thousand five hundred dollars ($7,500) and interest thereon. That he advanced said sum in good faith for the purchase of the assets of said Shelton Electric Company and that the delay in the execution of said mortgage was not through any fault of his own."

In our opinion, the court rightly held that the facts here stated constituted no defense to the appellant's cause of action. The appellant's equities are not superior to the respondent's. If it be true that he entrusted his money to Wickstrom and the West Coast Power Company under an agreement that he should be secured by a lien on the property purchased therewith, and that these persons have betrayed the trust to his loss, his sole remedy is against them. The respondent was no party to the agreement and is not to be held charged therewith, even though it may have known the nature of the agreement. It seems to be assumed, however, that the property of the corporation is something distinct and apart from the shares of stock of the corporation, and that the pledge of the one for the purchase price does not prohibit the pledge of the other for an antecedent debt. Such is not the rule. The capital stock of a corporation has no value unless the property of the corporation be kept intact, and the pledgee of the stock, may, under all the authorities, prevent any wrongful or illegal disposition of the corporate property that will destroy the value of the pledge.

In the second affirmative defense, it is alleged that, subsequent to the institution of the present action, the respondent instituted an action to foreclose the lien of its pledge on the capital stock of the Shelton Electric Company, and obtained a decree of foreclosure in that action under which it purchased the stock for the full amount of its demand. From these facts, the conclusion is drawn that the debt of the appellant is fully paid, and the respondent's position changed from that of a pledgee of the stock to that of a stockholder in the corporation, and hence it cannot longer prosecute its action as a pledgee of the stock. But while the nature of the respondent's relation to the corporation may have changed by its outright purchase of the stock it held in pledge, its right to the relief sought is not affected thereby; it still has the right to have the mortgage removed as an unwarranted invasion of its property rights. As it had capacity to in-

stitute the action and was rightly in court until this change in condition, and is still entitled to relief from the mortgage, we can conceive no advantage in now turning it out of court, only to permit it to return and prosecute its action in another form. To do so would be only to mulct the respondent with unnecessary costs and to cast additional duties on an already overburdened court, without any useful or practical purpose or benefit of any kind.

At the trial of the cause, the respondent was permitted to introduce in evidence, over the objection of the appellant to the effect that it had not been properly authenticated, the certificate of stock issued to Wickstrom at the time of the transfer, and which Wickstrom assigned to the respondent in pledge. This certificate bore on its face what purported to be the corporate seal of the company, and was signed by one G. W. Draham, as president of the corporation, and by one Horace Fogg, as secretary thereof. The appellant assigns the admission of the certificate as error, and urges in support of the assignment that the authenticity of the seal was not proven, and that it was not proven that Fogg was secretary or that Draham was president of the corporation. The record does not disclose that any witness was asked directly whether or not the impression of the seal appearing on the certificate of stock was the impression of the seal of the Shelton Electric Company, but the evidence is clear that this was the certificate issued by the company and pledged to the respondent as security for the obligation owing it. It bore a seal purporting to be the seal of the company, and we think that the fact that it was issued by the company and treated by the company, the officers thereof, and by the officers of the corporation to which it was pledged as the stock of the company, sufficient evidence to prove its authenticity. We think, moreover, that it may be questioned whether the general words in which the objection was made suggests the precise question. At any rate, it did not suggest it to the trial judge or to counsel trying the cause for the respondent,

else direct evidence on the matter would have been introduced, as it was a matter susceptible of proofs and the evidence was at hand.

Nor do we think there is merit in the claim that there was no sufficient evidence of the official capacity of the persons signing the certificate of stock as president and secretary. It was testified by Draham that he was the duly elected and acting president of the company, and that Horace Fogg was the duly elected secretary. The appellant's precise contention is that this was not the best evidence, that these facts could only be shown by the minutes of the meeting of the stockholders of the company at which the election took place. But it was shown that regular minutes of the meeting at which the election took place were actually kept, and that they had subsequently been misplaced or lost and that due and diligent search had been made for them without discovering them. If the evidence offered on this point should be deemed secondary evidence, clearly a ground was laid for its admission. Again, it is said that there was no proof of the competency of the persons named to hold their respective offices, that it was not shown they were stockholders in the corporation. But we think the evidence on this point sufficient also. It does not appear that any shares of stock stood in the names of either of these persons, but it appeared that the stock of the corporation was held by the Kneeland Investment Company in trust for them with other owners. This was sufficient to enable them to qualify as officers.

Finally, it is urged that there was no sufficient evidence of the pledge of the stock; the claim being that there was no evidence of its delivery to the pledgee. But without particularly reviewing the evidence on this point, we think it justifies the conclusion of the trial judge. In fact, the transfer to Wickstrom and the pledge of the stock by him to the respondent seems to have been made with the usual formalities. At any rate, it was actually delivered to, and actually

held by, the respondent in pledge until the proceedings in foreclosure were had.

We agree with appellant's counsel that the result of the case works a hardship upon their client, that he stands to lose the very considerable sum he has advanced to further the proceedings. But we think the loss was due to the acts of persons other than the respondent or the Shelton Electric Company. Their conduct seems to have been regular and aboveboard, and in the furtherance of a legitimate business transaction. The appellant's losses cannot, therefore, be visited upon them.

The judgment is affirmed.

CROW, C. J., MOUNT, PARKER, and MORRIS, JJ., concur.