[No. 24283. Department Two. February 6, 1933.]

JOHN ISENHART, *Respondent*, v. WENATCHEE SECURITIES COMPANY *et al., Appellants.*[1]

*Arthur G. Cohen,* for appellants.

*Fred Kemp,* for respondent.

BLAKE, J.—This action was brought to foreclose a pledge of stock of the defendant Wenatchee Securities

[1]Reported in 18 P. (2d) 852.

Company, and to cancel certain obligations claimed by the other defendants to be due and owing by it to the Commercial Bank and Trust Company. From a judgment foreclosing the pledge and canceling the obligations, defendants appeal.

In July, 1929, the Commercial National Bank desired to purchase a site for a bank building. To that end, its officers caused to be organized the Wenatchee Securities Company. The capital stock of this company consisted of 1,000 shares, 996 of which have been at all times owned by the bank, and four of which have been held by trustees and officers of the bank for the purpose of qualifying them to act as trustees of the Securities Co.

On July 1, 1929, the Securities Co. executed its note for $19,000, payable to respondent, and at the same time there was pledged to him, as security, the 1,000 shares of its capital stock. This $19,000 went into the purchase of a piece of property for a bank site. At purchase, and since, this property has carried mortgage encumbrances in excess of twenty thousand dollars. It is valued at forty thousand dollars, and is the only asset of the Securities Co. having any substantial value.

The bank failed and, on February 2, 1932, was taken over by the defendant Moody, as supervisor of banking. At the time the bank closed, there appeared among its assets an overdraft of the Securities Co., amounting to $298.76, and two notes executed by it. One of these notes, dated December 8, 1931, was for $3,538.77, upon which there was a balance due of $999.47; the other note, dated January 5, 1932, was for $4,554.91.

In this court, the appellants have not questioned the judgment, in so far as it forecloses the pledge of the stock, but they do contend that the court was in error

in cancelling the notes and the obligation on the overdraft. Appellants contend that the note for $4,554.91 was given by the Securities Co. on account of the purchase price of forty-two shares of stock of the bank. The trial court aptly characterized this transaction as being ''in the twilight zone.'' The record is very hazy concerning the ownership of these shares. We shall state such facts as the record discloses concerning their history.

It appears that, a number of years ago, a corporation which owned a majority of the bank stock went into bankruptcy. It was thought by officers and trustees of the bank that it would be to the best interests of the bank to gather in the shares owned by the bankrupt. A plan was worked out whereby various officers and stockholders of the bank took over certain blocks of such stock. The plan was to pass this stock on to the public. It apparently was not intended by any of the officers and stockholders who stood sponsor for any block of such stock to take it over on his own account. Most of such stock had been passed on to the public long ago, but there were a few blocks, among which was the forty-two shares here involved, which had not been sold.

One Knapp was the sponsor for this particular block. The shares had been carried in his name, but evidently had been paid for by the bank, because, all through the years, the bank held his note for an amount representing the purchase price. On November 6, 1931, Knapp's certificate for these shares was turned in and canceled, and a certificate for forty-two shares was issued to W. D. Shultz, who was a trustee and cashier of the bank, and also a trustee and vice-president of the Securities Co. Knapp died December 23, 1931. On December 24, Frank W. Shultz, who was trustee and president of both the bank and Securities Co., told

Mrs. Knapp that Walter Shultz had taken over the forty-two shares of stock that Mr. Knapp had been carrying.

December 31, 1931, the bank paid to W. D. Shultz a dividend on these shares, amounting to $252. He voted them at the annual stockholders meeting held on January 12, 1932. On January 5, 1932, W. D. Shultz, as vice-president of the Securities Co., executed the note here in question.

During the month of January, the condition of the bank was critical. On January 20, the note for $4,554.91 was applied on Knapp's note to the bank, which at that time amounted to $10,052.68. On the same day, the dividend check for $252 was converted into a cashier's check and applied on the Knapp note. By these entries on the books of the bank, the Knapp indebtedness was reduced to $5,145.77.

■ We think the foregoing narrative makes it clear that the purpose of these transactions was: First, to relieve Knapp's estate of liability for the purchase price of these forty-two shares of stock, and also to relieve it of the super-added liability which was impending on account of ownership of them; and second, to enable W. D. Shultz to escape the super-added liability on account of them. The transaction was wholly for the benefit of either Knapp, Shultz, or the bank, and perhaps all three. If the bank did not benefit by it, nevertheless it must be apparent that the transaction was planned and executed by its agents and officers to the detriment of the Securities Co. and to the damage of the respondent, as pledgee of its stock. The note was without consideration, and respondent is entitled to have it canceled. *Kneeland Investment Co. v. Berendes*, 81 Wash. 372, 142 Pac. 869.

■ The proceeds of the note for $3,538.77 were used to pay premiums on life insurance policies, in

which the bank was named as beneficiary, on the lives of Frank W. Shultz and W. D. Shultz. The former was president and trustee of both the bank and Securities Co.; the latter was cashier and trustee of the bank and a trustee of Securities Co. Subsequent to the execution of the note, the Shultz' borrowed the full loan value of the policies and applied the proceeds on the note, thus reducing it to $999.47. The policies were assigned to the Securities Co. The supervisor of banking contends that this assignment constitutes a consideration for the note.

The reason for this transaction is not made clear by the record, but we are convinced that the assignment of the policies to the Securities Co. was in the nature of a security to it for the loan of its credit to the amount of $3,538.77. The application of the proceeds from the loans on the policies supports this theory of the transaction. The payment of $3,538.77 for life insurance policies with a loan value of $2,500 can hardly be justified on the basis of sound investment. The fallacy of the supervisor's contention may be made clear by a hypothetical case. Suppose the Shultz' had died subsequent to February 2, and that the face value of the policies (forty-five thousand dollars) had been realized, would he be here contending that, by this note, these policies had been purchased by the Securities Co.? Purchase of the policies is the only theory upon which he can sustain his present position.

We think that, by this transaction, the bank did not lose its interest as beneficiary of these policies. The note was executed by the Securities Co. solely for the benefit of the bank, and there was no consideration running to the Securities Co. for it. The respondent is entitled to have it canceled. *Kneeland Investment Co. v. Berendes, supra.*

When the bank closed, the account of the Se-

curities Co. showed an overdraft of $298.76. Respondent contends that this overdraft is the result of a loan of two thousand dollars made by the Securities Co. to Frank W. Shultz, in March, 1931. He argues that, had it not been for the loan to Shultz, there would be no overdraft. That does not necessarily follow. That amount of money might have gone in other channels long before the overdraft in question occurred. An examination of the bank account of the Securities Co. shows that, after the two thousand dollar check went through on March 20, 1931, there was still a balance of $483.89. From then until January 6, 1932, the account showed a substantial balance, except for two periods totaling about seven weeks, when it was overdrawn. From January 6 until the bank closed, the account was overdrawn in varying amounts.

We must assume that the checks which occasioned this last overdraft were issued to pay legitimate obligations of the Securities Co. There is nothing in the record to show otherwise.

Whatever Frank W. Shultz' responsibility for the overdraft was, it was as an individual and officer of the Securities Co. and not as an officer of the bank. There is nothing in the record to show that the bank profited by, or was in any way concerned with, the two thousand dollar loan to Shultz. We think the overdraft is a legitimate obligation of the Securities Co., and that the judgment should be modified in that respect.

The judgment is in all other respects affirmed.

BEALS, C. J., TOLMAN, MAIN, and STEINERT, JJ., concur.