[No. 16262–4–I. Division One. March 25, 1987.]

VIRGINIA GUSTAFSON, *Appellant,* v. RAGNAR
GUSTAFSON, ET AL, *Respondents.*

*Robert M. Sifferman,* for appellant.

*Edward R. Skone* and *Vane & Skone,* for respondents.

DORE, J.*—A pledgee of the majority of shares in a close corporation brought a shareholder derivative suit to void the sale of real property which the corporation indirectly owned. The trial court entered summary judgment against the plaintiff, holding that she lacked standing to sue individually or to bring the derivative suit. We reverse.

## FACTS

During their marriage, Virginia and Ragnar Gustafson acquired 395 of the 500 shares of R & H Associates, a Washington corporation. R & H was the general partner of ABC Properties Associates, a Washington limited partnership. R & H had no other assets other than a 75.57 percent share of ABC Properties. ABC Properties owned three valuable parcels of property in Bellevue.

Ragnar also was the president of a wholly distinct corporation, ABC Electric Co., which leased space from ABC Properties. During the 1970's ABC Electric was a successful electric installation company, but in 1980 it began experiencing financial difficulties. By the end of 1980, Ragnar had acquired almost all the shares of this company, as well as all 500 shares of R & H.

Virginia and Ragnar were divorced on July 1, 1980. Pursuant to a property settlement agreement executed immediately before the divorce, Ragnar received all of the stock of ABC Electric, ABC Properties and R & H Associates. As her share of the community property, Virginia received other assets, as well as a judgment against Ragnar for $155,000, payable in monthly installments. As security for

---

*This appeal was heard by a Supreme Court Justice, a retired Supreme Court Justice, and a Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

this judgment, Ragnar pledged 395 shares of R & H. The pledge agreement provided:

> So long as the husband is not in default in his obligation to the wife . . . the husband shall exercise and enjoy all the rights accruing from the ownership of the stock . . . except that the husband shall not sell or hypothecate the escrowed stock.

Clerk's Papers, at 237. Ragnar defaulted on the payments during July 1982, and under normal circumstances, Virginia could have used the pledged stock to satisfy her judgment.

By early 1980, ABC Electric was in serious financial trouble. ABC Electric had previously borrowed $10,000 from Roger Fosseen, and he also guaranteed a loan of $50,000 to the company. In 1979, First Western Bank was formed, and Fosseen became president. The Bank then loaned additional funds to ABC Electric, securing the loans from ABC Electric's accounts receivable. The proceeds of the loans helped ABC Electric to pay the money owed to or guaranteed by Fosseen.

ABC Electric's financial condition steadily deteriorated. In October 1980, the Bank discovered that ABC Electric's financial statements were incorrect, and that the company's net worth was substantially less than the Bank had been led to believe. Nevertheless, despite the fact that at that time the loans outstanding to ABC Electric were well secured and the Bank at that point could call in all of its loans without losing any money, the Bank instead continued to lend large amounts of money to the company throughout 1981. The Bank and Ragnar agreed to use the Bellevue land, held by ABC Properties, as security for these loans. Security agreements were executed and increased loans were made to ABC Electric, but neither ABC Properties nor R & H received any consideration, despite the fact that it was their land which was used to secure loans to a wholly unrelated entity.

ABC Electric went further into debt, and by early 1982, Ragnar acting for R & H, the general partner of ABC Properties, deeded the three properties to the Bank in lieu

of the Bank's foreclosing on them. A deed in lieu of fore-
closure was executed on May 27, 1982, and the Bank gave
Ragnar personally a check for $100,000, representing the
properties' residual value after the loans were paid. At no
time did R & H or ABC Properties receive any considera-
tion whatsoever for securing ABC Electric's loans. The
Bank, however, by ignoring Virginia's equitable interest in
the properties, acquired the land itself as payment for
improvidently lent funds at double digit interest rates.

The Bank immediately sold the properties by statutory
warranty deed to Colen Radford for approximately
$500,000. It is worth noting that the Bank gave Radford a
loan of over $100,000 to aid in the purchase of this land,
and again used the properties as security for the loan. Rad-
ford had attempted to purchase the properties directly
from Ragnar, but the deal fell through because of Ragnar's
alleged misrepresentations about the size of the parcels.
Radford bought the properties from the Bank as a nominee
for a partnership to be formed which eventually consisted
of Radford, his brother, John, and William Buchan, and
their wives. A few months later, the Radfords deeded their
interest to the Buchans for valuable consideration.

On December 16, 1983, Virginia brought suit individually
and derivatively on behalf of R & H to void the deed of
ABC Properties' land and to quiet title in ABC Properties.
She also sought damages for breach of contract, breach of
fiduciary duty and fraud. The gist of her complaint was
simply that R & H and ABC Properties gained nothing by
having their one valuable asset, the three parcels of land,
used as security for ABC Electric to continue to receive
loans from the Bank. The overall effect of the deed in lieu
of foreclosure of ABC Properties' land was to render ABC
Properties, and hence R & H valueless, as well as her
pledge of R & H stock. The only party to gain from these
transactions was the Bank, which received interest on the
loans and later the properties, while ignoring Virginia's
equitable interest. As a result of the Bank's and Ragnar's
actions, Virginia could not recover the $155,000 dissolution

judgment against Ragnar when he defaulted on his payments.

The Buchans moved for summary judgment and the Bank sought judgment on the pleadings. The trial court granted these motions on the grounds that Virginia, as a mere pledgee, lacked standing to sue. The Buchans counterclaimed and moved for summary judgment for attorney fees and costs on the basis that the lawsuit was frivolous. The trial court denied this motion. Both the Buchans and Virginia appeal.

## STANDING TO SUE

The Superior Court dismissed Virginia's suit on the grounds that, as a mere pledgee of R & H stock, she lacked standing to sue to void transactions entered into between ABC Properties and the Bank. We disagree.

The doctrine of standing requires that a plaintiff must have a personal stake in the outcome of the case in order to bring suit. The Supreme Court once described this requirement as "one seeking relief must show a clear legal or equitable right and a well–grounded fear of immediate invasion of that right." *DeFunis v. Odegaard,* 82 Wn.2d 11, 24, 507 P.2d 1169 (1973) (citing *State ex rel. Hays v. Wilson,* 17 Wn.2d 670, 673, 137 P.2d 105 (1943)), *vacated and remanded on other grounds,* 416 U.S. 312 (1974).

Ordinarily, a shareholder cannot sue for wrongs done to a corporation, because the corporation is viewed as a separate entity, and the shareholder's interest is too remote to meet the standing requirements. However, because of the possibility of abuse by the officers and directors of a corporation, a narrow exception has been created for shareholders to bring derivative suits on behalf of the corporation. CR 23.1 imposes four requirements upon a party who wishes to bring derivative actions: (1) he or she must be a shareholder at the time of the complained of transaction, (2) the action must not simply be collusive in order to confer jurisdiction on the court, (3) the complaint must allege what attempts the shareholder made to have the directors or

corporation bring the suit, and (4) the shareholder bringing suit must fairly and adequately represent the interest of the class.

 It is clear that in this case, Virginia did not meet the first requirement. She had an equitable ownership interest in the stock by virtue of her status as a pledgee, but the pledge agreement specifically gave Ragnar legal ownership of the stock. Nevertheless, we do not believe that CR 23.1 should be read so narrowly as to deny all equitable owners the right to bring derivative suits to protect their equitable interest. Prior case law in this and other jurisdictions supports a liberal reading of the shareholder requirement in CR 23.1.

In *Kneeland Inv. Co. v. Berendes*, 81 Wash. 372, 142 P. 869 (1914), the Supreme Court voided the mortgage of corporate property on the grounds that the pledgee of the corporate stock was injured by the mortgage. The corporation received no consideration for the mortgage, which clearly diminished the worth of the corporation, and hence, the value of the pledge. The court, in allowing the pledgees to bring suit to void the mortgage, stated:

> The capital stock of a corporation has no value unless the property of the corporation be kept intact, and the pledgee of the stock, may, under all the authorities, prevent any wrongful or illegal disposition of the corporate property that will destroy the value of the pledge.

*Kneeland,* at 381. Similarly, in *Isenhart v. Wenatchee Sec. Co.,* 171 Wash. 601, 18 P.2d 852 (1933), the Supreme Court, citing to *Kneeland,* ruled that pledgees could cancel a corporate debt which apparently was entered into without consideration and to the detriment of the pledgees.

More recently, in *LaHue v. Keystone Inv. Co.,* 6 Wn. App. 765, 496 P.2d 343 (1972) this court allowed a derivative suit even though the plaintiff did not allege ownership of stock. While the case was decided on the narrow grounds that the woman suing had a presumptive community interest in her husband's stock, the court stated that "[m]ost cases hold that one may be a stockholder for stockholder

derivative suit purposes if he holds a mere equitable interest in the stock." *LaHue,* at 776. *See also* 12A W. Fletcher, *Private Corporations* § 5651, at 567 (1984).

Moreover, sound public policy dictates that this result be followed. As one federal circuit court stated:

> Moreover, situations will arise, as in this case, where the pledgor is the principal alleged wrongdoer. In such situations the interests of the pledgor and of the pledgee substantially conflict. A rule that would condition the pledgee's derivative suit rights upon the willingness of the pledgor to assert them would tend to aggravate the potential for harm implicit in that conflict.

*In re Pittsburgh & L.E. R.R. Sec. & Antitrust Litig.,* 543 F.2d 1058, 1067 (3d Cir. 1976). To allow Ragnar and the Bank in this case to defeat the pledge given to Virginia and then for us to deny Virginia standing to assert a derivative claim makes little sense and would be extremely unfair and unjust. The Bank and Ragnar acted wrongfully with the knowledge that they were defeating Virginia's rights, and we refuse to countenance such conduct.

We note that Virginia has standing to bring this claim on her own behalf as a pledgee of corporate stock.

> A pledgee of stock has standing in a Rule 23.1 case both to assert a derivative claim based on federal law and to object to a settlement of that claim. . . . *A pledgee may maintain such actions in his own name, although a stockholder could not do so, since he is not a stockholder* . . . Also, the pledgee is not obliged first to appeal to the corporation or its officers to bring the suit. . . .
> The pledgee is entitled to have his security protected from fraudulent dissipation by the pledgor, where the latter practically controls the corporation . . .

12A W. Fletcher, *Private Corporations* § 5651, at 567–68 (1984). *Accord, Weingand v. Atlantic Sav. & Loan Ass'n,* 1 Cal. 3d 806, 464 P.2d 106, 83 Cal. Rptr. 650 (1970); *Cream City Mirror Plate Co. v. Coggeshall,* 142 Wis. 651, 126 N.W. 44 (1910); *Kneeland Inv. Co. v. Berendes, supra.* The trial court erred in denying Virginia standing to sue on her own behalf as well as on behalf of the corporation.

## THE PROPER REMEDY

The Bank and the Buchans assert that even if Virginia did have standing to sue, she does not have the right to void all the transactions which have occurred.

R & H did not own the land in question. Rather, it was the general partner, which owned the majority of the partnership shares of the limited partnership, ABC Properties. This partnership owned the land which comprised the valuable asset in this case. ABC Properties entered into the security agreement with the Bank to guarantee loans given to ABC Electric, and when ABC Electric could not pay back the debt incurred, ABC Properties was forced to deed the land to the Bank in lieu of foreclosure. The Bank and the Buchans, who eventually purchased the land in question, claim that if Virginia has standing to assert a right of R & H, she does not have the right to assert the claims of ABC Properties.

We disagree. Had ABC Properties not existed and R & H owned the properties directly, it is clear that Virginia would have been able to void R & H's mortgage and deed in lieu of foreclosure either in her own right as pledgee or on behalf of the corporation in a derivative suit. *Kneeland Inv. Co. v Berendes, supra; LaHue v. Keystone Inv. Co., supra.* We see no reason to deny Virginia this remedy merely because Ragnar had the foresight or good fortune to have created ABC Properties, the limited partnership controlled by R & H which nominally owned the properties involved. To do so would promote form over substance.

This decision is bolstered by RCW 25.10, which controls the rights and obligations of limited partnerships. R & H, as general partner of the limited partnership ABC Properties, "has the rights and powers and is subject to the restrictions of a partner in a partnership without limited partners." RCW 25.10.240(1). RCW 25.04.100(1) provides that "[w]here title to real property is in the partnership name, any partner may convey title to such property . . ." However, an exception to this rule exists when the party to whom the conveyance is made knows that the partner is

exceeding his authority or when the conveyance is apparently not for the carrying on of partnership business. RCW 25.04.090(1), (2).

The Bank in this case had actual notice that R & H was in fact exceeding its authority as general partner by encumbering and then deeding the properties involved. The Bank simply chose to ignore the various legal forms of the entities it dealt with, even though it admits that it knew of the pledge agreement between Ragnar and Virginia. The internal bank memoranda also make it clear that ABC Properties and R & H were treated solely as assets of Ragnar, and that no consideration whatsoever was given to Virginia's pledge of R & H stock. Clerk's Papers, at 39–43. The Bank simply chose to disregard Virginia's equitable claim in the corporation, and instead continued to loan Ragnar large sums of money at double digit interest rates, using ABC Properties as security for the loan. Finally, once the Bank received a deed for that land in lieu of foreclosure, it did not give the excess of the land's value over the debt owed back to ABC Properties. Instead, it issued a $100,000 check to Ragnar personally and turned around and sold the properties to the Radfords, taking the position that this maneuver voided all equitable rights that Virginia had in the properties.

We are left with a situation in which the Bank knew that ABC Properties and R & H received no benefit whatsoever in encumbering the real estate in question. Nevertheless, the Bank actively participated in a security agreement, which had the effect of rendering the limited partnership and corporation valueless, and did so to secure high interest rate loans. It did so with knowledge that Virginia had equitable rights in R & H. The Bank therefore cannot argue that the rule that a partner acting apparently in the scope of the business of the partnership can give good title to the purchaser of real estate. The exception in RCW 25.04.090 controls, as the Bank knew and cooperated with Ragnar in looting the limited partnership. It is clear that these acts were outside the scope of the limited partnership's business

and in clear breach of the fiduciary duties owed to the partnership.

Furthermore, Colen Radford also knew that ABC Properties had received no consideration from the deed of the properties to the Bank. Radford had attempted to purchase the land directly from ABC Properties, and had already entered into an earnest money agreement and brought suit to compel the sale of the land when the deed in lieu of foreclosure in favor of the Bank was executed. Radford, therefore, must have been equally aware that by virtue of the Bank's acquisition of the properties in question, ABC Properties would lose a valuable asset for no consideration. Thus, Radford also cannot claim that he did not know that the deed in lieu of foreclosure was accomplished without the necessary authority, and any subsequent deed to Radford would also fail to defeat ABC Properties' right to the land.

Finally, this same argument applied to the Buchans. While the Buchans claim they had no notice of any irregularities in these transactions, the record shows that they had entered into a partnership agreement with Colen Radford and his brother to develop the land in question. Clerk's Papers, at 317–32. Colen Radford's knowledge would therefore be imputed to the Buchans. *Mid–City Materials, Inc. v. Heater Beaters Custom Fireplaces,* 36 Wn. App. 480, 674 P.2d 1271 (1984). The Buchans cannot, therefore, claim that they were bona fide purchasers for value.

The deed from ABC Properties to the Bank is void. Any subsequent transfer of the subject land was to parties who knew of the earlier irregularities and therefore, were not bona fide purchasers for value. We hold that the properties shall be returned to ABC Properties and title be quieted in that limited partnership.

### ATTORNEY FEES

The Buchans have asked this court for attorney fees. Our disposition of the case against the Buchans makes this

request meritless, and we deny attorney fees. Virginia has also asked for attorney fees on two different theories.

Virginia's first theory is that by acting on behalf of the corporation, she created a "common fund" which obtained benefits for the corporation as a whole and not just for herself. Under the common fund theory, a successful litigant who obtains a pecuniary benefit for a large group of people may obtain reimbursement for his or her attorney fees from that fund. *Weiss v. Bruno,* 83 Wn.2d 911, 523 P.2d 915 (1974). This doctrine has been extended to persons conferring benefits on a corporation as a whole. *See Seattle Trust & Sav. Bank v. McCarthy,* 94 Wn.2d 605, 617 P.2d 1023 (1980).

Nevertheless, we do not believe this common fund theory is applicable here. Virginia did not benefit a large group of people. R & H was a close corporation, and the only person who would benefit from the voidance of the deed is Virginia. There has been no showing that other corporate creditors are in a better position because of this suit, and Ragnar, the sole shareholder in the corporation, will not be any better off as he has used the properties involved as collateral. Virginia is not entitled to attorney fees on a "common fund" basis.

Virginia in addition argues that she is entitled to attorney fees from the Bank because it knowingly participated in Ragnar's scheme to render valueless R & H assets. While it is undisputed that Ragnar's actions to sell corporate property for his own personal benefit violated his fiduciary duty to R & H, the Supreme Court recently held that a bank which knowingly acquiesces to a breach of fiduciary duty by another party is not liable for attorney fees absent some other authority. *Smith v. Olympic Bank,* 103 Wn.2d 418, 693 P.2d 92 (1985). We deny Virginia attorney fees.

## CONCLUSION

The trial court's dismissal of the case on Virginia's lack of standing is reversed. Virginia was entitled to bring a shareholder's derivative suit on behalf of R & H as well as a

lawsuit on behalf of herself individually. R & H can void the encumbrance and deed of the properties to the Bank because Ragnar acted without authority by causing R & H to encumber and deed ABC Properties' land, and the Bank had knowledge of and participated in this improper action.

The title of the three parcels of property involved in the subject suit is quieted exclusively in ABC Properties, and it is entitled to all the benefits of ownership as if no deed had been conveyed.

FORREST and HOROWITZ, JJ. Pro Tem., concur.

Reconsideration denied July 2 and August 24, 1987.

Review denied by Supreme Court January 5, 1988.