711 So.2d 108 (1998)
Rosalyn KAPLUS, Individually and on Behalf of First Continental Corporation, a Florida corporation, Appellant,
v.
FIRST CONTINENTAL CORPORATION, a Florida corporation, Hillel Meyers, an individual, Neil Meyers, an individual, and Robert Kaplus, an individual, Appellees.
No. 97-1494.
District Court of Appeal of Florida, Third District.
April 22, 1998.
Rehearing Denied June 10, 1998.
*109 Andrew Hall and Associates, P.A., and Andrew C. Hall, and Christopher J. Dawes, and Sheri M. Gutsin, Miami, for appellant.
Buchbinder & Elegant, P.A. and Harris J. Buchbinder, Miami, for appellees.
Before SCHWARTZ, C.J., and GREEN and SHEVIN, JJ.
GREEN, Judge.
In this shareholder's derivative action, appellant, Rosalyn Kaplus, appeals the involuntary dismissal with prejudice of several of her causes of action against First Continental Corporation and its directors, Hillel Meyers, Neil Meyers, and Robert Kaplus. The lower court dismissed these actions based upon its determination that Rosalyn Kaplus lacked standing to complain about events which transpired prior to her legal ownership of the shares in this corporation.
At issue before us is whether Rosalyn Kaplus, who is the former wife of director, Robert Kaplus, and who acquired her shares in the corporation as equitable distribution in their marital dissolution proceeding has standing to bring this action to seek redress of certain allegedly wrongful acts committed prior to her legal ownership of the shares. Although this precise issue appears to be one of first impression in Florida, we conclude that she does have standing to proceed as her ownership of the shares devolved by operation of law. We therefore treat this appeal as a petition for certiorari, grant the writ and quash the order under review.
During the Kaplus marriage, Robert amassed a fortune by acquiring shares in some fifty corporations, including First Continental Corporation, a company which purchases, develops, sells and leases condominium time share units. Robert owned onethird of First Continental and was on its board of directors. Sometime in 1993, Robert and Rosalyn sought a dissolution of their marriage. It was during this time that the improprieties complained of in this action allegedly occurred. According to the allegations in Rosalyn's verified complaint, it was during the pendency of her dissolution action that First Continental provided various loans in excess of ten million dollars to other entities owned and/or controlled by appellees. These loans were allegedly made without documentation, collateral, or corporate resolutions. *110 Further, these loans have allegedly never been repaid, nor has any interest been received from them and they otherwise disappeared from the corporation's books in 1994.
On April 7, 1995, just prior to the scheduled trial of their dissolution action, Robert and Rosalyn Kaplus entered into a settlement agreement for the equitable distribution of their marital assets. Rosalyn received, among other things, shares in all but two of the corporations that were part of the Kaplus marital estate. Pursuant to this agreement, Rosalyn received a one-sixth interest in First Continental. On April 10, 1995, the court approved the settlement agreement and incorporated it into the final judgment of dissolution between the parties. After entry of this final judgment, Rosalyn made demand on appellees that her one-sixth interest in First Continental be transferred to her and that the corporation address several of the wrongful acts complained of in this litigation. It is alleged that appellees then attempted to gift away the uncollected, due, and owing loan amounts by reclassifying them as "stockholder dividend distributions" without Rosalyn's approval and despite the fact that she was then legally entitled to a one-sixth ownership interest in First Continental. Rosalyn asserts that she never received her one-sixth share of the outstanding loan amounts and/or "stockholder dividend distributions." Rosalyn further alleged in this derivative action that appellees depleted the assets of First Continental by causing the corporation to:
(a) pay [appellees] excessive compensation unrelated to and in excess of the value of their services to First Continental;
(b) pay [appellees], or on their behalf, personal expenses having no connection to the business of First Continental; and
(c) pay Affiliated Entities excessive fees for services allegedly performed by these Affiliated Entities for, or on behalf of First Continental.
In response to Rosalyn's derivative action, the appellees made a motion to dismiss on the grounds, among other things, that Rosalyn lacked standing to challenge events which allegedly occurred before her legal ownership of the shares. The lower court granted this motion with prejudice as to those causes of actions in the amended complaint which were based on events which occurred prior to Rosalyn's legal ownership of the shares. This appeal followed.
In a derivative action, a stockholder seeks to sustain in his or her name, a right of action belonging to the corporation. See Provence v. Palm Beach Taverns, Inc., 676 So.2d 1022, 1024 (Fla. 4th DCA 1996) (citing James Talcott, Inc. v. McDowell, 148 So.2d 36, 37 (Fla. 3d DCA 1962)). "Accordingly, the corporation is the real party in interest with the stockholder being only a nominal plaintiff." Id. Section 607.07401, Florida Statutes (1993), also known as the "contemporaneous stock ownership rule," was enacted to prevent predatory strike suites and expressly provides when a shareholder has standing to bring a derivative action: "(1) A person may not commence a proceeding ... unless the person was a shareholder of the corporation when the transaction complained of occurred or unless the person became a shareholder through transfer by operation of law from one who was a shareholder at that time." The statute further provides that a shareholder includes one who is "a beneficial owner." § 607.07401(7), Fla. Stat. (1993). The purpose of this standing requirement is to ensure that derivative actions are brought only by those individuals who have a legitimate stake in the corporation so that its interests are adequately represented. See South End Improvement Group, Inc. v. Mulliken, 602 So.2d 1327, 1330 (Fla. 4th DCA 1992).
Because of the equitable nature of derivative actions, courts outside of Florida have liberally construed statutes similar to section 607.07401 to grant standing in a variety of factual settings without requiring "record" stock ownership. Id.; see also Hurt v. Cotton States Fertilizer Co., 145 F.2d 293, 295 (5th Cir.1944) (residuary legatee under will disposing of corporate stock had sufficient equitable interest to qualify as "stockholder" for purpose of bringing derivative action notwithstanding that executor retained power to sell stock to pay debts of estate); Edgeworth v. First Nat'l Bank of Chicago, 677 F.Supp. *111 982, 991-93 (S.D.Ind.1988) (income beneficiary of trust, although not legal owner of shares, had sufficient equitable interest to having standing to bring derivative action); Pearce v. Superior Court of Kern County, 149 Cal.App.3d 1058, 1067-68, 197 Cal.Rptr. 238 (1983) (trust beneficiary who `beneficially' owned shares had standing to file derivative action); Gustafson v. Gustafson, 47 Wash.App. 272, 734 P.2d 949, 953 (1987) (pledgee of corporate stock had sufficient equitable interest to confer standing to bring derivative action notwithstanding requirement that plaintiff must have been a "shareholder at time of complained of transaction"); LaHue v. Keystone Inv. Co., 6 Wash.App. 765, 496 P.2d 343, 350 (1972) (widow's one-half community interest in stock held in husband's name prior to his death, whether or not formally set aside to her in course of probate of husband's estate, is a one-half vested beneficial interest in those shares permitted to maintain derivative action). Florida courts have, to date, apparently aligned themselves with these jurisdictions which recognize that strict record ownership is not necessary and that holders of equitable or beneficial interests in shares have standing to sue. See World Time Corp. of Am. v. Mizrachi, 702 So.2d 284, 284 (Fla. 4th DCA 1997) (seller of stock met statutory definition of shareholder where he retained beneficial ownership of stock after it was placed in escrow); Provence, 676 So.2d at 1024-25 (although plaintiff in derivative action did not possess any stock at the time of the alleged "pirating" of the corporation's assets, he acquired standing through his "`equitable ownership' of the stock via a constructive trust").
Rosalyn Kaplus asserts that she has standing to maintain this derivative action because she had an equitable interest in her former husband's shares of the company during their marriage. She further maintains that her equitable interest in these shares actually ripened into legal ownership upon the entry of her divorce decree. The appellees maintain on the other hand that if we were to hold that Rosalyn had an equitable interest in her former husband's shares during their marriage, then any spouse of a record shareholder would have standing to commence a derivative action even without the consent of the actual shareholder spouse. As intriguing as this issue is, it is one that we need not reach in this case because we agree with Rosalyn's alternative assertion that her acquisition of these shares devolved by operation of law.
The "contemporaneous stock ownership rule" expressly provides that standing may also arise when a person becomes a shareholder through transfer by operation of law from one who was a shareholder at that time. See § 607.07401(1), Fla. Stat. (1993). The term operation of law has been defined as "the manner in which rights ... devolve upon a person by the mere application ... of the established rules of law, without the act or co-operation of the party himself." Dawson v. Dawson, 645 S.W.2d 120, 126 (Mo. App.1982) (citation omitted); see also South End, 602 So.2d at 1331 ("`Operation of law' means that the shares come to the transferee without any act or cooperation on his part."). To date, the concept has frequently been applied to situations where a plaintiff has acquired title as a result of rights obtained through a will. See id. (citations omitted). However, we see no reason why title to shares should not similarly be deemed to have devolved by operation of law when they are clearly marital assets and subject to equitable distribution in a dissolution action pursuant to section 61.075, Florida Statutes (1993). Although Rosalyn and Robert Kaplus may have voluntarily entered into a settlement agreement for the distribution of their marital assets, this agreement could not become effective until the court placed its imprimatur on the same and incorporated it into a final dissolution judgment. See GEICO Fin. Servs., Inc. v. Kramer, 575 So.2d 1345, 1346-47 (Fla. 4th DCA 1991) (transfer of marital assets upon an entry of final judgment is an equitable distribution under section 67.075 and is a transfer by operation of law); see generally Field v. Field, 68 So.2d 376 (Fla.1953) (it is error to adjudicate the parties' property rights without dissolving the marriage); Ellis v. Ellis, 242 So.2d 745, 747 (Fla. 4th DCA 1971) (the judicial authority to adjudicate property rights between a husband and a wife can only be exercised where the marriage is dissolved); Miller v. *112 Eatmon, 177 So.2d 523, 526 (Fla. 1st DCA 1965) (same). The primary purpose behind the contemporaneous stock ownership rules is to prevent an outsider from buying or acquiring shares for the purpose of seeking to upset an action that had been taken by the corporation at some previous time. See Dawson, 645 S.W.2d at 126. We do not believe that this purpose is frustrated by conferring standing upon the former spouse of a shareholder who has acquired title through a final dissolution decree. We deem it highly unlikely that two parties who are in the throes of a divorce would collude with each other and intentionally transfer stock for the sole purpose of enabling one of the parties to bring a derivative action.
Indeed, the record in this case simply does not support the appellees' argument that Rosalyn somehow "cherry-picked" this stock for the sole purpose of bringing this derivative action against the company. All of her former husband's shares in the various corporations were clearly marital assets which were subject to equitable distribution. She received shares in virtually all of the corporations which were part of the marital estate. She can scarcely then be deemed a speculator against whom the contemporaneous stock ownership rule seeks to protect corporations. We therefore conclude that the lower court's dismissal of her actions was error and we quash the order under review.
Writ granted.