898 So.2d 89 (2005)
Mark TIMKO, Appellant,
v.
Onofrio TRIARSI, et al., Appellees.
No. 5D04-986.
District Court of Appeal of Florida, Fifth District.
February 11, 2005.
Rehearing Denied April 15, 2005.
*90 John F. Mariani and Christopher Kammerer of Gunster, Yoakley Stewart, P.A., West Palm Beach, for Appellant.
Michael V. Elsberry and W. Drew Sorrell of Lowndes, Drosdick, Doster, Kantor Reed, P.A., Orlando, for Appellees.
TORPY, J.
The question presented in this shareholder derivative action is whether a plaintiff/shareholder, to have standing to prosecute such an action, is required to have continuous ownership of his or her shares throughout the pendency of the action. Our resolution of this issue requires that we construe Florida's "contemporaneous ownership rule," embodied in section 607.07401, Florida Statutes (2002). We conclude that continuous ownership is required. Therefore, Appellant lost standing to prosecute this action when he was divested of his ownership interest in his shares.
When Appellant commenced the instant shareholder derivative action, he was a shareholder of the closely-held corporation that is the subject of this dispute. However, as a result of another legal proceeding, Appellant's ownership interest in his shares was terminated while the instant action was still pending.[1] Based thereon, the trial court determined that Appellant lacked standing to proceed and granted Appellees' Motion to Dismiss.[2] In affirming the trial court, we begin our analysis by briefly discussing the history of derivative proceedings.
Shareholder derivative suits were originally created by common law as a means to enable shareholders to police "faithless directors and managers." Larsen v. Island Developers, Ltd., 769 So.2d 1071, 1072 (Fla. 3d DCA 2000) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). In such suits, shareholders are permitted to redress rights of action that belong to corporations that have been injured by the acts of the corporations' officers and directors. Provence v. Palm Beach Taverns, Inc., 676 So.2d 1022, 1024 (Fla. 4th DCA 1996). Historically, this right of action spawned abusive, predatory practices, wherein persons acquired shares of stock for the sole purpose of instituting suits. To prevent such "predatory strike suits," Florida, like most jurisdictions, has, by statute, interposed a restriction on would-be plaintiffs known as the "contemporaneous stock ownership rule," which "expressly provides when a shareholder has standing to bring a derivative action."[3]Kaplus v. First Continental Corp., 711 So.2d 108, 110 (Fla. 3d DCA 1998) (Emphasis added). "The purpose of this *91 standing requirement is to ensure that derivative actions are brought only by those individuals who have a legitimate stake in the corporation so that its interests are adequately represented." Id. (citing South End Improvement Group, Inc. v. Mulliken, 602 So.2d 1327, 1330 (Fla. 4th DCA 1992)) (Emphasis added).
Ironically, Appellant relies upon Florida's "contemporaneous stock ownership rule," which was intended to impose additional restrictions on a shareholder's common law right to maintain a derivative suit, to argue that he is not required to have any present stake in the corporation to continue the prosecution of this action. Thus, our analysis of this argument requires that we examine the language of section 607.07401(1), which provides in pertinent part:
607.07401 Shareholders' derivative actions. 
(1) A person may not commence a proceeding in the right of a ... corporation unless the person was a shareholder of the corporation when the transaction complained of occurred....
(Emphasis added). Based on this language, Appellant argues that, because the statute does not expressly require present share ownership, one whose shares are disposed of during the pendency of the suit may nevertheless continue to prosecute a `shareholder' derivative suit. Indeed, Appellant also acknowledges and advocates that, under his interpretation of the statute, share ownership by the plaintiff is not even essential at the outset of the litigation. We think this construction ignores the language of the statute and does violence to the legislative intent underlying the statute.
Because section 607.07401 does not, by its express terms, purport to create a right of action, we interpret it to recognize the pre-existence of this common law right. By use of the phrase "may not" and the word "unless" the legislature has simply manifested its intent to place additional limits upon this preexisting right to ensure that a plaintiff's stake in the lawsuit is "legitimate," meaning an ownership interest that is not acquired for predatory purposes. The requirement of some continuous stake in the corporation, however, clearly required at common law, is not vitiated by the statute. See Fox v. Prof'l Wrecker Operators of Florida, Inc., 801 So.2d 175 (Fla. 5th DCA 2001) (recognizing that common law right to bring derivative claim against not-for-profit corporation not abrogated by 1993 statutory amendment deleting reference to derivative actions in not-for-profit statute). To hold otherwise would undermine the very purpose for which the statute was enacted by permitting the anomalous result that a plaintiff with absolutely no "dog in the hunt" is permitted to pursue a right of action that belongs solely to the corporation. Such a result clearly thwarts the statutory prophylactic designed to ensure "adequate representation" of the corporation by derivative plaintiffs. Nothing in the language of the statute suggests that the legislature intended to so drastically expand this historic right of action in the face of a clear legislative trend in this and other jurisdictions to do just the opposite.
In conclusion, we hold that a plaintiff in a derivative suit, in addition to meeting the requirements of the statute, must meet the common law requirement of continuous ownership throughout the pendency of the suit.[4] In holding as we have today, we *92 align ourselves with the overwhelming majority of courts in other jurisdictions that have confronted this issue. See Schilling v. Belcher, 582 F.2d 995 (5th Cir.1978) (construing Federal Rule 23.1 and precursor to section 607.07401; sale of stock during pendency of appeal from judgment in derivative suit defeats standing to continue); Lewis v. Ward, 852 A.2d 896 (Del.2004) (under Delaware statute, similar to Florida's, loss of ownership of stock through merger during pendency of suit divests plaintiff of standing); Lewis v. Turner Broad. Sys., Inc., 232 Ga.App. 831, 503 S.E.2d 81, 84 (1998) (after loss of share ownership through merger, plaintiffs lost standing to maintain derivative action); A-Plus Janitorial & Carpet Cleaning v. Employers' Workers' Compensation Ass'n, 936 P.2d 916, 924 (Okla.1997), and cases cited therein (under Oklahoma statute, similar to Florida's, continuous ownership required to maintain derivative claim); Christopher v. Liberty Oil & Gas Corp., 665 So.2d 410, 411 (La.Ct.App.1995) (former shareholders of corporation lacked standing under similar statutory scheme); U.S. Fid. & Guar. Co. v. Griffin, 541 N.E.2d 553, 554-55 (Ind.Ct.App.1989) (continuous ownership required to have standing); Weil v. Northwest Indus., Inc., 168 Ill.App.3d 1, 118 Ill.Dec. 717, 522 N.E.2d 172, 174, n. 1 (1988) (share ownership by plaintiff must be maintained during pendency of suit); Yanow v. Teal Indus., Inc., 178 Conn. 262, 422 A.2d 311, 323 (1979) (continuous ownership from time acts occur until judgment required to have standing to maintain derivative suit).[5]
AFFIRMED.
PLEUS, J., concurs.
MONACO, J., dissents with opinion.
MONACO, J., dissenting.
I respectfully dissent. I do so from a number of different perspectives, but the two most important are, first, because I believe the legislature is fully aware of how to draft a statute; and second, because I believe that the appellant, Mark Timko, has a full sized "dog in the hunt." A few of the facts of this case may make clear my position.
In August of 1998, Mr. Timko and one of the appellees, Onofrio Triarsi, formed Ferrari of Central Florida, Inc. ("Ferrari"), in order to operate a Ferrari franchise car dealership in the Central Florida area. The parties agreed that each would own 50% of the shares and, in addition, the individual shareholders agreed that Mr. Timko would act as the president and general manager. In his position as president Mr. Timko was to be responsible for the day-to-day operations of the dealership, and was to receive a salary and benefits, as well as any dividends that might be distributed to him by virtue of his stock ownership interest. The dealership was financed by borrowing $400,000.00 from a person named Oscar Davis. The debt was secured by a promissory note to Mr. Davis. In November of 1998, the dealership opened. While Mr. Timko handled the management of the Ferrari dealership, Mr. Triarsi stayed in New Jersey.
Some time later Mr. Timko was informed by attorneys representing Mr. Triarsi that Mr. Triarsi's recently formed company, Triarsi Enterprises, Ltd., had purchased the $400,000.00 note and other loan documents from Mr. Davis, and that Triarsi Enterprises was exercising a "conversion *93 right" contained within the documents. According to the attorneys representing Mr. Triarsi, this event converted the unpaid balance of the loan from Mr. Davis into 100% of the equity in Ferrari, thus giving Triarsi Enterprises total control over Ferrari, and completely divesting Mr. Timko of his 50% ownership interest in the company.
Following his purported ouster from Ferrari, Mr. Timko filed an action consisting of a four count complaint seeking declaratory relief, an accounting, damages for breach of fiduciary duty, and dissolution of the corporation. Initially, the trial court rendered an order on Mr. Timko's action seeking dissolution of Ferrari pursuant to section 607.1430, Florida Statutes (2000). The court noted that Mr. Triarsi and Triarsi Enterprises had elected their right under section 607.1436, Florida Statutes (2000), to purchase the interest of Mr. Timko in Ferrari for its fair value. The court found that Mr. Timko's share of Ferrari was 50%, and that the value of his 50% share was $138,000.00. The court, however, deferred ruling on the terms and conditions under which payment were to be made to Mr. Timko.
On November 13, 2003, the lower court entered an order and partial final judgment on Mr. Triarsis motion for entry of final judgment determining valuation. The court confirmed that Mr. Triarsi was to pay Mr. Timko $138,000 within ten days after the order became final, and dismissed the remainder of the complaint. The trial court then ordered further that:
[E]ffective the date of this order, Mr. Timko shall no longer have any rights or status as a shareholder of Ferrari of Central Florida, except the right to receive the amounts awarded by this order, which, subject to all provisions of this order and section 607.1436, shall be enforceable in the same manner as any other judgment.
Mr. Timko appealed this order, and that appeal is currently pending in another proceeding before this court.
Before the entry of the November 13, 2003, partial final judgment, and while he was still a shareholder of Ferrari, Mr. Timko brought a shareholder derivative suit on behalf of Ferrari. His suit sought relief for breach of fiduciary duty and conversion, alleging a usurpation of corporate opportunity by Mr. Triarsi, as well as self-dealing and conversion. In addition, Mr. Timko noted that the corporation had earned substantial profits, about $733,000 of which were attributed to him as a 50% shareholder in income tax documents filed by Ferrari. He asserted that his pro rata share of these profits, however, had never been distributed to him.
After entry of the November 13, 2003, partial final judgment in the earlier suit, Mr. Triarsi and Triarsi Enterprises moved to dismiss the shareholder's derivative action, asserting that Mr. Timko lacked standing to pursue that action, as he was no longer a shareholder of Ferrari. They argued that Mr. Timko lost any rights that he might have had as a shareholder upon the entry of the earlier judgment. The trial court granted the motion to dismiss, and Mr. Timko timely appealed.
The statute governing shareholder derivative actions is section 607.07401, Florida Statutes (2003), the first subsection of which reads, as follows:
A person may not commence a proceeding in the right of a domestic or foreign corporation unless the person was a shareholder of the corporation when the transaction complained of occurred or unless the person became a shareholder through transfer by operation of law from one who was a shareholder at that time.
*94 Two things are immediately apparent from a plain reading of this statute. First, the only requirement that it places on someone who wishes to bring a shareholder derivative suit is that the person be a shareholder of the corporation when the transaction complained of occurred. It simply does not say that the person seeking to bring the suit must also be a shareholder at all times that the suit is pending. Second, the legislature chose broadly to allow "a person" to commence a proceeding, not the more restrictive "a shareholder." This is of particular interest because the preamble to earlier versions of the statute began "In any action commenced or maintained by a shareholder." See, e.g., § 607.147 Fla. Stat. (1976). Thus, "shareholder" became "person" as the statute matured.
Our legislature is fully capable of drafting statutes. If the legislature had chosen to require that the person maintaining the suit be a shareholder at all times, it would have said so, and it would have done so in unambiguous language. There is absolutely no indication in the wording of the statute that would suggest that the legislature was somehow building on a pre-existing common law requirement. Surely it would have said so if that is what it intended. As the statute is clear, there is no reason to resort to statutory interpretation to force additional requirements into it.
The majority nevertheless posits that the legislature in drafting the present statute intended to place additional limits on the common law right of a person to bring a derivative suit, and apparently did not bother to mention that there is another unstated common law requirement that is a prerequisite to standing. With all due respect to the majority, if section 607.07401 is in derogation of the common law, then the tenets of statutory construction dictate that it must be strictly construed. See Florida Dep't of Health and Rehab. Services v. S.A.P., 835 So.2d 1091 (Fla.2002); Humana Health Plans v. Lawton, 675 So.2d 1382 (Fla. 5th DCA 1996). If the statute is strictly construed, then we cannot engraft additional unarticulated requirements into it that have not been approved by the legislature.
The trial court in this action appears to have been convinced that the decision in Schilling v. Belcher, 582 F.2d 995 (5th Cir.1978), compelled a ruling that Mr. Timko lacked standing to bring the derivative action. I think the statutory treatment of Schilling militates in favor of the opposite conclusion.
Schilling involved a derivative action governed by Florida law in which the ultimate holding was that a shareholder who sells his or her stock pending appeal loses standing to further prosecute or defend the case, except to the extent that the judgment runs personally in favor of that person. The federal court rejected an opinion of the Second District Court of Appeal in DiGiovanni v. All-Pro Golf, Inc., 332 So.2d 91 (Fla. 2d DCA 1976), in which the Florida appellate court interpreting a predecessor to the present derivative suit statute held that "one need not even be a stockholder at the time of filing a derivative suit so long as he was one at the time of the transaction complained of." The Schilling court dismissed this holding as "gratuitous dictum," and said simply that the DiGiovanni court "did not correctly state the law." The federal court went on to apply federal law and the federal rules of procedure to this question of standing. Schilling, 582 F.2d at 1001. Among other things, the Schilling court noted that the preamble to the statute referred to the individual bringing the suit as a "stockholder," and apparently drew an inference that the use of that word signaled that one must own shares at the time one commences the suit.
*95 Curiously, however, under the statute through which the Schilling derivative claim was brought,[1] one had to demonstrate that the plaintiff was "a stockholder of such corporation at the time of bringing the action and that he was a stockholder of such corporation at the time of the transaction of which he complains," or that he obtained his interest by operation of law. The succeeding statute,[2] however, which is quite similar to the current statute, omitted that part of the language requiring the plaintiff to be a stockholder at the time of the bringing of the action. When the DiGiovanni court noticed this glaring omission, it opined that the contemporaneous ownership provision has been eliminated by the legislature. Surprisingly, the Schilling court disagreed.
It seems to me that if the statute at one time contained a provision for contemporaneous ownership, and if the legislature later removed that language, the legislature is telling us that the requirement has been eliminated. While I certainly respect the Schilling court's determination to apply federal standing requirements to derivative actions, I do not believe that we are bound by or ought to be bound by that conclusion. See Gaillard v. Natomas Co., 173 Cal.App.3d 410, 219 Cal.Rptr. 74 (1985).
I dissent, as well, because I believe that Mr. Timko specifically fulfills all of the requirements imposed by law upon a person seeking to bring a shareholder's derivative suit. He was unquestionably a shareholder at the time of the transaction about which he complains, as required by the statute, and he only ceased being a shareholder as a result of an action taken by the circuit court. He was, as well, as shareholder of Ferrari at the time he filed the derivative action. That he was a shareholder at the time of the commencement of suit is evidenced by the fact that Ferrari continued to treat him as a shareholder for tax purposes  even attributing a large share of the profits to him  even though it did not pay him any part of that fund. Of course, I recognize that he put himself at risk for being bought out when he commenced his first suit seeking, among other things, dissolution of Ferrari. Nevertheless, he did not willingly disgorge himself of the shares of that company. It strikes me that the reason the statute is written as it is takes into account this and similar scenarios in which the shareholder loses that status by an operation of law.
Supporting this view is Gaillard. There, where a person lost her status as shareholder by virtue of a merger, the California court concluded that it would be inequitable to require continuing ownership in order to maintain a shareholder derivative suit, saying:
Moreover, the imposition of a continuing ownership requirement in this case would lead to the incongruous result of barring a lawsuit which challenges the wrongful acts of management in bringing about the merger, because of the merger itself. To hold that a merger has the effect of destroying such causes of action would be tantamount to giving free reign to deliberate corporate pilfering by management and immunizing those responsible from liability by virtue of the merger which they arranged. This would be a grossly inequitable result.
Gaillard, 219 Cal.Rptr. at 79. The same rationale applies to the present controversy.
Finally, the intention behind the standing rule is to ensure that the plaintiff has a *96 legitimate stake in the corporation in order to adequately represent the corporations interests in the derivative suit. See Provence v. Palm Beach Taverns, Inc., 676 So.2d 1022, 1024 (Fla. 4th DCA 1996). The statute is, indeed, intended to prevent predatory strike suits, as the majority notes. In the present case, however, it is clear that Mr. Timko did not obtain shares of stock in order to bring a strike suit, and that he is fully motivated to represent the interests of the corporation in this action. I see no reason to deny him this opportunity.
I would reverse.
NOTES
[1] Appellant initiated another proceeding to dissolve the corporation pursuant to section 607.1430, Florida Statutes (1999). As a result, Appellee, Onofrio Triarsi, exercised his right to purchase all of Appellant's shares pursuant to section 607.1436, Florida Statutes.
[2] In granting the motion to dismiss, the trial judge considered evidence extrinsic to the complaint. Ordinarily, this would not be proper. Here, however, at oral argument, Appellant's counsel, Mr. Mariani, expressly waived this argument and suggested that this court treat the lower court's order as a summary judgment. We appreciate and commend counsel's willingness to forego this procedural objection in the interest of both judicial economy and reducing the costs to the litigants.
[3] § 607.07401, Fla. Stat. (2002).
[4] We acknowledge that "shareholder" is a term of art that includes a "beneficial owner." § 607.07401, Fla. Stat. (2002); Provence, 676 So.2d at 1024. Here, however, we reject Appellant's argument that he is a "beneficial owner."
[5] We recognize that the other proceeding, wherein Appellant's ownership interest was extinguished, is pending on appeal in this court. Should that judgment be reversed in such a manner as to once again vest Appellant with shares in the corporation, the dismissal of this action is without prejudice.
[1] § 608.131, Fla. Stat. (1974).
[2] § 607.147, Fla. Stat. (1976).