IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 16, 2019 Session

## UNITED SUPREME COUNCIL AASR SJ ET AL. v. FREDRICK MCWILLIAMS ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-15-0846      Jim Kyle, Chancellor**

_____

### No. W2018-00116-COA-R3-CV

_____

This appeal concerns a derivative action brought on behalf of a non-profit corporation. Citing alleged embezzlement and misappropriation of funds by the directors, plaintiffs, members of the non-profit at the time of filing, brought a derivative action on behalf of the fraternal and charitable organization. After filing the derivative suit, plaintiffs established and became members of a competing organization. Pursuant to the original organization's constitution, this caused the plaintiffs to surrender all their membership rights in the original organization. Defendants moved for summary judgment based on plaintiffs' lack of standing to maintain the derivative action pursuant to Tennessee Rule of Civil Procedure 23.06. The trial court granted the motion, dismissing all of plaintiffs' claims against defendants, holding that plaintiffs could not fairly and adequately represent the interest of the organization's remaining members because they themselves were no longer members and because of the conflict of interest inherent in their establishment of the competing organization. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ROBERT E. LEE DAVIES, SR. J., joined.

John D Horne, Memphis, Tennessee, for the appellants, Ralph Slaughter, A. K. Wilkins, and Joseph Williams.

Albert G. McLean, Memphis, Tennessee, for the appellee, United Supreme Council AASR SJ.

Michael Burnett, Memphis Tennessee, for the appellee, Wilbert Curtis.[1]

L. Clayton Culpepper, III, Memphis, Tennessee, for the appellee, Deary Vaughn.

## OPINION

### I. BACKGROUND AND PROCEDURAL HISTORY

United Supreme Council AASR SJ ("USC")[2] is a nonprofit corporation organized under the laws of Tennessee. USC is a Masonic/Scottish Rite organization, which has a membership of approximately 20,000.

On June 25, 2015, Ralph Slaughter, A.K. Wilkins, and Joseph Williams (together, "the Plaintiffs") filed a derivative action on behalf of USC against four members of USC: Frederick McWilliams, Dreary Vaughn, Arvin W. Glass, and Wilbert Curtis (collectively, "the Defendants") in the Shelby County Chancery Court ("the trial court"). At the time of the filing, Plaintiffs were active members and officers of USC: Slaughter held the position of Grand Chancellor; Wilkins held the position of Grand Minister of State; and Williams held the position of Grand Attorney General. Similarly, Defendants—with the exception of McWilliams—were active members but were also directors of USC: Vaughn held the position of Sovereign Grand Commander; Glass held the position of Grand Treasurer; and Curtis held the position of Lieutenant Grand Commander.[3] USC was not named as a party in the action. In their complaint, Plaintiffs alleged that they had discovered willful and intentional acts on the part of Defendants constituting, among other things, embezzlement and misappropriation of corporate funds. The derivative action sought an accounting and money judgment in favor of USC, and it also sought injunctive relief preventing Defendants from participating in the management of the organization or accessing its assets. On July 22, 2015, Curtis filed a motion to dismiss, asserting, among other things, that Plaintiffs lacked standing to bring a derivative action on behalf of USC. Thereafter, in August 2015, both Vaughn and Glass filed separate motions to dismiss, adopting Curtis' reasoning. On September 17, 2015, the trial court ordered the parties to establish a date and time for the upcoming election of a new board for USC.

---

[1] Appellees Wilbert Curtis and Deary Vaughn filed a Notice of Joinder in the brief of United Supreme Council AASR, SJ, Defendant-Appellee, filed on July 23, 2018, but did not participate in oral argument.

[2] USC is known by its trademarked name "United Supreme Council, 33 Degree of the Ancient and Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, Southern Jurisdiction of the United States."

[3] McWilliams was an employee of USC.

Pursuant to the trial court's order, the parties established a date and time for the election and scheduled USC's annual convention for October 10, 2015. At the convention, Plaintiffs intended to run against and to unseat Defendants Vaughn, Glass, and Curtis for their positions as directors; however, Vaughn defeated Slaughter and was re-elected as Sovereign Grand Commander, and Curtis defeated Wilkins and was re-elected as Lieutenant Grand Commander. Williams was re-elected as Grand Attorney General, but he immediately resigned his position following the election results. Accordingly, as of October 10, 2015, Plaintiffs ceased to be officers of USC.

On October 14, 2015, just four days after the convention and election, Plaintiffs formed a rival corporation to USC (hereinafter "USC II").[4] Slaughter took the title of Sovereign Grand Commander of the newly formed organization. On October 19, 2015, Slaughter then issued a notice to all of the "Elected and Appointed Grand Lodge Officers, Worshipful Masters, Past Masters, Wardens and Members of the Constituent Lodges" of USC, in which he stated that, as Grand Master of the "Most Worshipful Prince Hall Grand Lodge" for the State of Louisiana, he withdrew "fraternal recognition" from USC and that all members should "[t]ake due notice and govern yourself accordingly."[5] Since its formation, USC II has allegedly taken banking accounts, deposits, and securities held by USC, the estimated value of which exceeds $100,000. On March 18, 2016, Michael Parris, a representative of USC II, stated to its members that USC II had taken control of sixteen "Consistories and Assemblies" that had been subordinate bodies of USC.

After Defendants failed to respond to Plaintiffs' requests for production of documents, Plaintiffs, on April 4, 2016, filed a motion to compel discovery. Defendants objected to Plaintiffs' requests, and, on May 6, 2016, the trial court entered an order on the motion, stating that Defendants should be permitted to file motions for summary judgment on or before June 29, 2016. The order further provided that if Defendants did file such motions, Plaintiffs would be permitted to file responses and, if additional documents were necessary to address the respective motions, the trial court would then conduct a hearing on Plaintiffs' April 4, 2016 motion to compel discovery.

On August 22, 2016, USC, through separate counsel, filed a motion to intervene in the derivative action, which the trial court granted on December 2, 2016. In its motion, USC asserted that, although Plaintiffs purportedly filed the derivative action on behalf of and for the benefit of USC, Plaintiffs themselves, pursuant to USC's constitution, were no longer members of USC and had, in fact, developed interests that were antagonistic to USC. USC then filed its answer to the derivative action on December 7, 2016 and, in the

---

[4] Plaintiffs formed the corporation under a similar name: "United Supreme Council of the Ancient Scottish Rite for the 33 Degree of Freemasonry, Southern Jurisdiction, Prince Hall Affiliated."

[5] In his notice, Slaughter specified that "[t]his withdrawal of Fraternal recognition is being done because this Supreme Council's methods of operation and conduct have been adjudged by this Grand Lodge to be a reflection upon the stature and dignity of Masonic Institutions and to be detrimental to the best interest of Masonry in this Jurisdiction."

same pleading, filed a cross-claim against McWilliams. Plaintiffs opposed dismissal of their derivative complaint, contending that they were lifetime members of USC and could continue to represent the interests of the members of USC. On December 22, 2016, Plaintiffs propounded expansive discovery requests on USC, seeking information regarding its tax returns, real estate documents, corporate documents, audits, expense payments, insurance claims, bank accounts, and other assets. In response, on February 8, 2017, USC filed a motion for a protective order staying discovery pending a determination by the trial court as to whether or not Plaintiffs lacked standing to fairly and adequately represent the interests of the members of USC. On April 10, 2017, USC filed a motion for summary judgment, asserting that Plaintiffs lacked standing because they had an "openly hostile relationship" with and were no longer members of USC. The trial court held a hearing on USC's motion for a protective order and, on April 11, 2017, entered an order granting the motion staying discovery pending a determination as to USC's April 10, 2017 motion for summary judgment based on Plaintiffs' alleged lack of standing. The order also gave Plaintiffs the opportunity to "advise [USC's] counsel by April 20, 2017, as to whether or not Plaintiffs seek any discovery from [USC] which is necessary to respond to the grounds on which [USC's] motion for summary judgment is based[.]"[6] Plaintiffs, however, never filed additional discovery requests related to the issue raised in USC's motion for summary judgment, but Plaintiffs and USC both provided numerous affidavits and documents supporting their respective positions regarding Plaintiffs' standing, or lack thereof.

On September 19, 2017, the trial court granted summary judgment to USC based on Plaintiffs' lack of standing. Specifically, the trial court concluded that Plaintiffs "voted with their feet" and left USC. Additionally, the trial court concluded that, because Plaintiffs had withdrawn their membership from USC and formed a rival corporation; they "do not and cannot 'fairly and adequately' represent the right of [USC] in this cause as required by Tenn. R. Civ. P. 23.06." The trial court dismissed all of Plaintiffs' claims against the Defendants, leaving only the cross-claim filed by USC against McWilliams. The trial court's order was certified as final pursuant to Tennessee Rule of Civil Procedure 54.02 on December 15, 2017. Plaintiffs timely appealed.

## II. ISSUE PRESENTED

As we perceive it, the issues on appeal are whether the trial court erred in granting summary judgment to USC on the basis of Plaintiffs' lack of standing, and whether the trial court afforded Plaintiffs a reasonable opportunity to engage in discovery.

---

[6] Additionally, the trial court's April 11, 2017 order gave Plaintiffs until June 20, 2017—70 days—to file their response and supporting papers in opposition to USC's motion for summary judgment.

## III. STANDARD OF REVIEW

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (quoting Tenn. R. Civ. P. 56.04). Further:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense.

*Id.* at 264. When a properly supported motion is made, "the nonmoving party may not rest upon the mere allegations or denial of [its] pleading, but must respond, and by affidavits or one of the other means provided in [Tennessee Rule of Civil Procedure 56], set forth specific facts at the summary judgment stage showing that there is a genuine issue for trial." *Id.* at 265 (internal quotations omitted).

"We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Id.* at 250. "In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008).

## IV. DISCUSSION

We first address Plaintiffs' argument that the trial court erred in failing to afford them a reasonable opportunity to engage in discovery. The record in this case indicates that on May 6, 2016—prior to USC's intervention—the trial court entered an order on Plaintiffs' motion to compel discovery from Defendants Vaughn, Glass, Curtis, and McWilliams. In the order, the trial court stayed general discovery but gave Defendants time to file motions for summary judgment and Plaintiffs the opportunity to seek limited discovery from the Defendants to respond to the summary judgment motions, if they were filed. Although Defendant Vaughn subsequently filed a motion for summary judgment, Plaintiffs did not file or serve any subsequent discovery requests. Similarly, on April 11, 2017, after USC intervened in the case and filed its own motion for summary judgment, the trial court entered an order on Plaintiffs' motion to compel discovery from USC. In the order, the trial court stayed general discovery pending a determination as to USC's motion for summary judgment but also gave Plaintiffs the opportunity to "advise

- 5 -

[USC's] counsel by April 20, 2017, as to whether or not Plaintiffs seek any discovery from [USC] which is necessary to respond to the grounds on which [USC's] motion for summary judgment is based[.]" Plaintiffs, again, did not file or serve any subsequent discovery requests. Accordingly, we conclude that the trial court did allow Plaintiffs a reasonable opportunity to engage in discovery related to the issue of standing, the specific ground on which the motions for summary judgment were based.

We turn next to Plaintiffs' argument that the trial court erred in granting USC's motion for summary judgment on the basis of Plaintiffs' lack of standing. In Tennessee, derivative actions are governed by both statutory law and the rules of civil procedure. The statute governing derivative actions brought on behalf of non-profit organizations is located at Tennessee Code Annotated section 48-56-401 and states in relevant part:

> (a) A proceeding may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor by:
> (1) Any member or members having five percent (5%) or more of the voting power or by fifty (50) members, whichever is less; or
> (2) Any director.
> (b) In any such proceeding, each plaintiff shall be a member or director at the time of bringing the proceeding.
> (c) A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the directors and either why the plaintiffs could not obtain the action or why they did not make the demand. If a demand for action was made and the corporation's investigation of the demand is in progress when the proceeding is filed, the court may stay the suit until the investigation is completed.

Tenn. Code Ann. § 48-56-401. Moreover, Tennessee Rule of Civil Procedure 23.06 provides, in relevant part:

> In a derivative action . . . the complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains . . . . The complaint shall also allege with particularity the efforts, if any, made by the plaintiffs to obtain the action desired from the directors or comparable authority and, if necessary, from the shareholders, or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.

- 6 -

Tenn. R. Civ. P. 23.06. Discussing the relationship between these two provisions, this Court has held that, "in order to ensure that the statutory scheme provided for the maintaining of a derivative suit remains uniform, we hold that a party must meet all the requirements of both [Tennessee Rule of Civil Procedure] 23.06 and [Tennessee Code Annotated section] 48-56-401." *Walker v. Tri-Cty. Elec. Membership Corp.*, No. 01-A-01-9002-CH00049, 1990 WL 120721, at *3 (Tenn. Ct. App. Aug. 22, 1990).

Plaintiffs assert on appeal that they have standing to maintain this derivative action because they "fairly and adequately represent the interests of [USC] and its members." USC disagrees with Plaintiffs' assertion and asks us to affirm the trial court, which concluded that Plaintiffs could not fairly and adequately represent the interests of USC and its members because the evidence reflected that Plaintiffs "ha[d] withdrawn membership" and "ha[d] formed a rival corporation." We address each issue in turn.

## A. The Continuous Ownership Requirement

The first aspect of the trial court's ruling—that Plaintiffs could not fairly and adequately represent the interests of USC and its members because they had withdrawn their memberships—is based on what several jurisdictions, both federal and state, refer to as the "continuous ownership" requirement.[7]

Federal Rule of Civil Procedure 23.1 requires that "a derivative plaintiff be a shareholder at the time of the alleged wrongful acts and that the plaintiff retain ownership of the stock for the duration of the lawsuit" to have standing to maintain a derivative action. *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983); *see also* Fed. R. Civ. P. 23.1. The first ownership requirement—that the plaintiff be a shareholder at the time of the alleged wrongful act—is explicit in both the Federal and Tennessee Rules of Civil Procedure and is referred to as the "contemporaneous ownership" requirement.[8] The second ownership requirement—that the plaintiff retain ownership of the stock for the duration of the lawsuit—is not expressly stated in either Federal Rules of Civil Procedure 23.1 or Tennessee Rule of Civil Procedure 23.06. Federal courts, however, have noted that it "has been inferred from its language[.]" *Chiles*, 719 F.2d at 1047; *Kolancian v. Snowden*, 532 F. Supp. 2d 260, 262 (D. Mass. 2008). Similarly, the majority of state

---

[7] Nearly all of the courts—both federal and state—that have addressed this issue have done so in the context of shareholder derivative actions on behalf of for-profit corporations—hence the continuous "*ownership*" requirement denomination. Accordingly, despite the fact that the case before us concerns a derivative action involving a non-profit corporation, we adhere to the traditional tag and, in the context of the case before us, use it synonymously with continuous membership.

[8] The federal rule provides that a derivative action complaint must "allege that the plaintiff was a shareholder or member *at the time* of the transaction complained of[.]" Fed. R. Civ. P. 23.1(b)(1) (emphasis added). Similarly, Tennessee's counterpart provides that the complaint must "allege that the plaintiff was a shareholder or member *at the time* of the transaction of which the plaintiff complains[.]" Tenn. R. Civ. P. 23.06 (emphasis added).

courts have also recognized the requirement's applicability despite the absence of express language in their respective statutes and rules governing derivative actions. *See Ark. Teacher Ret. Sys. v. Countrywide Fin. Corp.*, 75 A.3d 888, 894 (Del. 2013) ("The contemporaneous ownership requirement is imposed by [Delaware] statute. The continuous ownership requirement is a matter of common law."); *see also Metal Tech Corp. v. Metal Teckniques Co.*, 703 P.2d 237, 242 (Or. Ct. App. 1985) ("Although there are no statutory rules in Oregon governing standing in derivative litigation, we hold that general principles of standing require that, in order to bring a derivative suit, a shareholder must own stock at the time of the alleged wrong and retain ownership for the duration of the litigation.").

While the contemporaneous ownership requirement has been given the heft of statutory law, "the continuous ownership requirement remains a judge-made creature of equity." S. Michael Sirkin, *Standing at the Singularity of the Effective Time: Reconfiguring Delaware's Law of Standing Following Mergers and Acquisitions*, 69 Bus. Law 429, 440 (2014). However, we have been cited to no cases in Tennessee, nor have we found any, which address the issue currently before us. We, accordingly, must look to other jurisdictions—federal and state—for guidance.

Federal Rule of Civil Procedure 23.1(a) is nearly identical to Tennessee Rule of Civil Procedure 23.06, both of which provide in relevant part that "[t]he derivative action may not be maintained if it appears that the plaintiff does not *fairly and adequately represent the interests of shareholders or members who are similarly situated* in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1; Tenn. R. Civ. P. 23.06 (emphasis added). Federal case law interpreting Federal Rule of Civil Procedure 23.1(a) holds that a plaintiff shareholder or member of a corporation must retain his ownership or membership in the subject corporation throughout the derivative action to its conclusion in order to maintain standing. *Santomenno v. John Hancock Life Ins. Co.*, 677 F.3d 178, 183 (3rd Cir. 2012) (In the context of a Section 36(b) action—which it noted is undeniably derivative—the court stated that "[i]mposing a continuous ownership requirement throughout the pendency of the litigation assures that the plaintiff will adequately represent the interests of the security holders in obtaining a recovery for the benefit of the company."); *Johnson v. United States*, 317 F.3d 1331, 1334 (Fed. Cir. 2003) ("[W]hen a plaintiff bringing an action on behalf of the corporation is the legal owner of the stock at the time of filing but does not maintain shareholder status throughout the course of the litigation, the plaintiff no longer has standing to bring the action."); *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1443 n.2 (10th Cir. 1995) ("[I]t is generally held that the ownership requirement continues throughout the life of the suit and that the action will abate if the plaintiff ceases to be a shareholder before the litigation ends.") (quoting *Schilling v. Belcher,* 582 F.2d 995, 999 (5th Cir. 1978)); *Lewis*, 719 F.2d at 1047 ("[Federal Rule of Civil Procedure 23.1] requires that a derivative plaintiff be a shareholder at the time of the alleged wrongful acts and that the plaintiff retain ownership of the stock for the duration of the lawsuit."); *Lewis v. Knutson*, 699

F.2d 230, 238 (5th Cir. 1983) ("[F]or plaintiff to satisfy the standing requirements of Rule 23.1, he must demonstrate that he owned stock in the corporation at the time of the transaction of which he complains and throughout the pendency of the suit[.]"); *Portnoy v. Kawecki Berylco Industries, Inc.*, 607 F.2d 765, 767 (7th Cir. 1979) ("[A] plaintiff in a derivative action must maintain his shareholder status throughout the pendency of the lawsuit, and an action will abate if the plaintiff loses his shareholder status before the litigation ends.").

As the Seventh Circuit in *Portnoy* noted, the underlying rationale for the continuous ownership requirement is that,

> because a shareholder will receive at least an indirect benefit (in terms of increased shareholder equity) from any corporate recovery, he has an adequate interest in vigorously litigating the claim. A non-shareholder or one who loses his shareholder interest during the course of the litigation may lose any incentive to pursue the litigation adequately.

*Portnoy*, 607 F.2d at 767. Accordingly, "the plaintiff must continue to be a shareholder to ensure that he or she fairly and adequately represents the interests of the corporation." *Kolancian*, 532 F. Supp. 2d at 262.

While the above-cited federal court cases are not binding on this Court, when interpreting our own rules of civil procedure, we consult and are guided by the interpretation that has been applied to comparable federal rules of procedure. *State ex rel. Spurlock v. Torres*, No. W2016-01633-COA-R3-CV, 2017 WL 2333202, at *3 (Tenn. Ct. App. May 30, 2017); *see also Williamson Cnty. v. Twin Dawn Dev. Co.*, 498 S.W.2d 317, 320 (Tenn. 1973) ("[O]ur Rules having been taken from the Federal Rules of Civil Procedure, and the object of our virtual adoption of the federal rules being to have similar rules of procedure in state trial courts and federal district courts, it is proper that we look to the interpretation of the comparable Federal Rule[.]").

The "overwhelming majority" of state courts have ruled similarly,[9] concluding that a plaintiff must maintain continuous ownership in a corporation throughout the pendency of the derivative litigation to have standing. *See, e.g., Yanow v. Teal Indus., Inc.*, 422 A.2d 311, 323 (Conn. 1979) ("The logic of this 'continuous ownership'

---

[9] *See Timko v. Triarsi*, 898 So. 2d 89, 91-92 (Fla. Dist. Ct. App. 2005) ("In [applying the continuous ownership requirement], we align ourselves with the overwhelming majority of courts in other jurisdictions that have confronted this issue."). *See also* Malaika M. Eaton et al., *The Continuous Ownership Requirement in Shareholder Derivative Litigation: Endorsing a Common Sense Application of Standing and Choice-of-Law Principles*, 47 Willamette L. Rev. 1, 3 (2010) ("[T]he overwhelming majority of jurisdictions (including federal courts) have concluded that a plaintiff who voluntarily or involuntarily ceases to be a shareholder, even momentarily, during the pendency of a derivative action loses standing to pursue the lawsuit.").

requirement is apparent: a plaintiff may not seek to vindicate the rights of a corporation of which he is not a shareholder, or, as in the present case, which has ceased to exist."); *In re New Valley Corp. Derivative Litigation*, C.A. No. 17649, 2004 WL 1700530, at *3 (Del. Ch. June 28, 2004) ("This rule [referring to the continuous ownership rule] . . . has become a bedrock tenet of Delaware law and is adhered to closely."); *Lower v. Lanark Mut. Fire Ins. Co.*, 502 N.E.2d 838, 840 (Ill. App. Ct. 1986) ("[A] plaintiff in a shareholder's derivative suit must have been a shareholder at the time of the transaction of which he complains and must maintain his status as a shareholder throughout the entire pendency of the action."); *U.S. Fidelity & Guar. Co. v. Griffin*, 541 N.E.2d 553, 555 (Ind. Ct. App. 1989) ("[A] merger which eliminates the ownership in the corporation's stock also eliminates a former shareholder's standing to sue."); *Billings v. GTFM, LLC*, 867 N.E.2d 714, 724 (Mass. 2007) ("[W]e hold that [plaintiff's] loss of any ownership interest in GTFM, although involuntary, deprived him of standing to press derivative claims."); *Schwartz v. Custom Printing Co.*, 926 S.W.2d 490, 494 (Mo. Ct. App. 1996) (holding that plaintiff lacked standing to bring a derivative action because he lost his right to hold shares in the corporation as soon as he was terminated); *White v. Banes Co.*, 866 P.2d 339, 342 (N.M. 1993) ("[W]e agree with the reasons for the continuous ownership rule . . . . We do not believe that our legislators would choose to entrust the responsibility of vindicating unenforced corporate rights to someone who is no longer a member of the class which will benefit or suffer from such actions."); *Bronzaft v. Caporali*, 162 Misc. 2d 281, 283 (N.Y. Sup. Ct. 1994) ("This section has been interpreted as requiring a plaintiff in a shareholder derivative action to not only have been a shareholder at the time of the transaction complained of as well as at the time of the commencement of the action, but also that the plaintiff maintain its shareholder status throughout the pendency of the action without interruption."); *Metal Tech Corp.*, 703 P.2d at 242 ("Although there are no statutory rules in Oregon governing standing in derivative litigation, we hold that general principles of standing require that, in order to bring a derivative suit, a shareholder must own stock at the time of the alleged wrong and retain ownership for the duration of the litigation.").

Significantly, numerous state courts with rules of procedure governing derivative actions similar to Tennessee's have held that the continuous ownership requirement is specifically animated by the language that the plaintiff in a derivative action "fairly and adequately represent" the interests of the shareholders. *See, e.g.*, *Timko*, 898 So. 2d at 90; *Keever v. Jewelry Mountain Mines, Inc.*, 688 P.2d 317, 318 (Nev. 1984); *A-Plus Janitorial & Carpet Cleaning v. Emp'r Workers' Comp. Ass'n*, 936 P.2d 916, 924 (Okla. 1997); and *Sound Infiniti, Inc. v. Snyder*, 237 P.3d 241, 247 (Wash. 2010). In *Timko v. Triarsi*, a shareholder's derivative action was dismissed after he lost his shares in a closely-held corporation as a result of a separate legal proceeding. *Timko*, 898 So. 2d at 90. The Florida District Court of Appeals affirmed the dismissal, holding that a plaintiff in a derivative suit "must meet the common law requirement of continuous ownership throughout the pendency of the suit." *Id.* at 91. According to the *Timko* court, to hold otherwise would "clearly thwart[] the statutory prophylactic designed to ensure '*adequate*

*representation*' of the corporation by derivative plaintiffs." *Id.* (emphasis added). In *Keever v. Jewelry Mountain Mines, Inc.*, the Supreme Court of Nevada concluded that a minority shareholder did not have standing to maintain a derivative action after he had voluntarily sold all of his stock. *Keever*, 688 P.2d at 318. In so holding, the court reasoned that "[t]he requirement that the representative plaintiff has an ongoing proprietary interest in the corporation ensures that the corporation's interests in the derivative action will be *adequately represented*." *Id.* at 317-18 (emphasis added). In *A-Plus Janitorial & Carpet Cleaning v. Employers' Workers' Compensation Ass'n*, the Supreme Court of Oklahoma noted that the "fairly and adequately" language in the Oklahoma Pleading Code is construed to mean that "the plaintiffs bringing a derivative claim must be shareholders at the time of the alleged wrong as well as retain ownership during the pendency of the lawsuit."[10] *A-Plus Janitorial*, 936 P.2d at 924. In *Sound Infiniti, Inc. v. Snyder*, the Supreme Court of Washington reaffirmed the "long-standing rule that a shareholder must *remain* a shareholder in order to maintain corporate derivative claims." *Sound Infiniti*, 237 P.3d at 247 (emphasis in original). The court emphasized that, because plaintiff was "no longer a member or shareholder[,]" it was "utterly unreasonable to think that [plaintiff] could *fairly and adequately* represent the interest of the shareholders similarly situated, as he is simply not a shareholder." *Id.* (emphasis added).

Additionally, some state courts have held that the continuous ownership requirement applies even despite the absence of such "fairly and adequately" language. In *Judson C. Ball Revocable Trust v. Phoenix Orchard Group I, L.P.*, the Arizona Court of Appeals stated:

> *Workman* does not suggest that [the continuous ownership requirement] would not apply absent the [fairly and adequately] language now omitted from Rule 23.1(b) . . . . In sum, we adopt the continuous ownership rule and hold that, to maintain standing in a derivative action, the plaintiff must not only possess an ownership interest when commencing the suit, but must also continue to maintain its ownership interests throughout the litigation.

*Judson C. Ball Revocable Trust*, 431 P.3d at 594. In *Grosset v. Wenaas*, the California Supreme Court concluded similarly:

> [W]e reject the implication that section 800's failure to expressly state a fair and adequate representation requirement reflects any intent on the part of our Legislature to secure the standing of a derivative plaintiff who, for

---

[10] *See also A-Plus Janitorial*, 936 P.2d at 924 ("The continuous-ownership requirement is based on the belief that only a party with an ongoing proprietary interest in the corporation on behalf of which action is maintained will *adequately represent* the corporation's interest in a derivative suit.") (emphasis added).

whatever reason, cannot provide fair and adequate representation. Moreover, as noted previously, maintaining continuous stock ownership is reasonably viewed as a requirement that is distinct from the fair and adequate representation requirement.

*Grosset*, 175 P.3d at 1195 n.10 (Cal. 2008).

Other state courts have supported the application of the continuous ownership requirement simply by noting the similarities between their own statutes or rules of procedure governing derivative actions and Federal Rule of Civil Procedure 23.1. *See, e.g.*, *Grace Bros., Ltd. v. Farley Indus., Inc.*, 450 S.E.2d 814, 819 (Ga. 1994) ("[T]he 'commenced or maintained' language in the shareholders' derivative statute . . . requires a continuation of shareholder status throughout litigation[.]"); *Vista Fund v. Garis*, 277 N.W.2d 19, 23 (Minn. 1979) ("It is consistent with the policy underlying Rule 23.06 to require continuous stock ownership . . . . [W]e conclude that continuous ownership must be required to effectuate the policy behind Rule 23.06."). In *Bacigalupo v. Kohlhepp*, the Kentucky Court of Appeals held that, because the state statute governing procedure in derivative actions mirrored the language of Federal Rule of Civil Procedure 23.1, "continuous ownership by a shareholder [is] a necessity in order to retain standing to prosecute a derivative action." *Bacigalupo v. Kohlhepp*, 240 S.W.3d 155, 157 (Ky. Ct. App. 2007). Similarly, in *Christopher v. Liberty Oil & Gas Corp.*, the Louisiana Court of Appeals noted that the rule governing derivative actions "utilizes the same language and imposes the same requirements on plaintiffs in derivative actions [as Federal Rule of Civil Procedure 23.1[,]" concluding that "[t]o bring such a suit one must have been a stockholder at the time of the complained occurrence and also must be a current stockholder." *Christopher v. Liberty Oil & Gas Corp.*, 665 So. 2d 410, 411 (La. Ct. App. 1995).

As stated previously, the underlying rationale for the application of the continuous ownership requirement is that, without a proprietary interest in the corporation, a shareholder will not have an adequate interest in "vigorously litigating" a derivative claim; a non-shareholder (or one who loses his proprietary interest during the course of litigation) has no (or may lose any) incentive to pursue the litigation adequately. The Supreme Court of California in *Grosset v. Wenaas* explained this rationale in detail:

> The fundamental purpose of a derivative action is to provide a means by which a stockholder may seek to enforce the rights of a corporation when the corporate board refuses to do so. If successful, a derivative claim will accrue to the direct benefit of the corporation and not to the stockholder who litigated it. Because a derivative claim does not belong to the stockholder asserting it, standing to maintain such a claim is justified only by the stockholder relationship and the indirect benefits made possible thereby, which furnish the stockholder with an interest and incentive to

- 12 -

seek redress for injury to the corporation. Once this relationship ceases to exist, the derivative plaintiff lacks standing because he or she no longer has a financial interest in any recovery pursued for the benefit of the corporation. As one court put it, allowing a plaintiff to retain standing despite the loss of stock ownership would produce the anomalous result that a plaintiff with absolutely no dog in the hunt is permitted to pursue a right of action that belongs solely to the corporation.

*Grosset*, 175 P.3d at 1193-94 (Cal. 2008). We are of the opinion that this rationale is equally appropriate in the context of a derivative action brought on behalf of a non-profit corporation. As the Kentucky Court of Appeals held in *Fenley v. Kamp Kaintuck, Inc.*:

We are convinced that *continuing membership in a nonprofit corporation is an absolute requisite* to maintaining a derivative action. As held in *Bacigalupo v. Kohlhepp*, "continuous ownership by a shareholder . . . [is] a necessity in order to retain standing to prosecute a derivative action." Although *Bacigalupo* involved a for-profit corporation, we view any distinction as *de minimis* and believe a variant of the "continuous ownership rule" is applicable in a derivative action involving a nonprofit corporation.

*Fenley v. Kamp Kaintuck, Inc.*, No. 2010-CA-001926-MR., 2011 WL 5443440, at *3 (Ky. Ct. App. Nov. 10, 2011) (emphasis added). Under the circumstances of this case, this Court is of the opinion that it is appropriate to adhere to the majority position as espoused by the foregoing case law—both federal and state—and apply a variant of the continuous ownership rule in the context of a derivative action involving a non-profit corporation. Therefore, to invoke and to maintain standing in a derivative action involving a non-profit corporation, a plaintiff must be a member at the time of the alleged wrongful act and must retain membership for the duration of the lawsuit.

Here, the record indicates that Plaintiffs brought the underlying derivative action on June 25, 2015 and subsequently established and became members of USC II. Article VI, Section 3 of USC's constitution provides that "[a]ctive members shall hold their title *ad vitam* unless they resign or be reclassified or removed for cause as provided in the Constitution[.]" Further, Article VI, section 16 provides that "[a]ny member who shall change his symbolic lodge and consistory membership from this jurisdiction, thereby surrenders all his rights, powers and privileges as such member." Plaintiffs do not dispute that they changed their lodge and consistory membership from USC jurisdiction.[11] Moreover, on October 19, 2015, Slaughter issued a notice to the members

---

[11] Plaintiffs admitted USC's statement of undisputed material fact that they had "changed their lodge and consistory membership from USC jurisdiction[.]" Plaintiffs attempt to minimize such admission by asserting that they are members "*ad vitam*" and that Article XXIX of USC's constitution

- 13 -

of USC in which he proclaimed, "I . . . do hereby withdraw Fraternal recognition from [USC]." Accordingly, the trial court concluded that "it is clear that plaintiffs ha[ve] withdrawn membership" from USC. We agree. Because Plaintiffs voluntarily surrendered their memberships from USC, we conclude that they could no longer fairly and adequately represent the interests of the members similarly situated in enforcing the rights of USC. To hold otherwise, under the circumstances of this case, would produce the "anomalous result" that Plaintiffs—who have absolutely "no dog in the hunt"—are permitted to pursue a right of action that belongs solely to USC.

## B. Plaintiffs' Conflict of Interest

The second aspect of the trial court's ruling was that Plaintiffs could not fairly and adequately represent the interests of USC and its members because they had formed a rival and competing corporation to USC. While the limited number of cases revealed by our research regarding conflicts of interest in derivative actions deal with the question of whether shareholders may bring derivative and individual actions simultaneously, we conclude that the underlying principle— that a conflict of interest may disqualify a shareholder from maintaining a derivative action—is nevertheless applicable to the present case.

In *Waterhouse v. B.P.C. Corp.*, this Court determined that a derivative plaintiff lacked standing due to a conflict of interest. *See Waterhouse v. B.P.C. Corp.*, No. 03A01-9106-CH-00079, 1991 WL 199480 (Tenn. Ct. App. Oct. 8, 1991). There, the plaintiff owned shares in Cumberland County Bank, which was controlled by B.P.C. Corporation. *Id.* at *1. The plaintiff brought a derivative claim on behalf of the bank and its other shareholders as well as a personal claim against the bank. *Id.* Emphasizing the "fair and adequate representation" language of Tennessee Rule of Civil Procedure 23.06, this Court held as follows:

> Clearly, maintaining a derivative action for and on behalf of a corporation, while at the same time asserting another claim against the corporation either in the same or a separate action is a patent conflict of interest. Here, it is clear from the record that the [plaintiff] is seeking to maintain a derivative action for and on behalf of the defendant Cumberland County Bank while at the same time asserting an individual claim against Cumberland County Bank. We hold that as a matter of law, the resulting conflict of interest disqualifies the appellant in this action as a plaintiff who may maintain a derivative action pursuant to 23.06, Tennessee Rules of Civil Procedure.

requires procedural due process before taking any discipline against a member, including removing membership. Plaintiffs' memberships, however, were not removed; rather, Plaintiffs voluntarily surrendered their memberships from USC by changing their lodge and consistory membership, which, according to the above cited section of USC's constitution, removes *ad vitam* membership.

*Id.* at \*2. The Supreme Court of Tennessee dealt with a similar situation in *Hall v. Tennessee Dressed Beef Co.*, where a shareholder-plaintiff brought both a derivative claim on behalf of and a personal claim against the defendant-corporation. There, the defendant cited to *Waterhouse* to support his argument that the derivative plaintiff lacked standing. *Hall v. Tenn. Dressed Beef Co.*, 957 S.W.2d 536, 540 (Tenn. 1997). In its ruling, the Supreme Court echoed this Court's statement regarding the relationship between derivative actions and conflicts of interest:

> Maintaining a derivative action on behalf of a corporation while at the same time asserting an individual claim against the corporation may constitute a conflict of interest; and, if there is a conflict of interest, the shareholder is disqualified from maintaining a derivative action pursuant to Tenn. R. Civ. P. 23.06.

*Id.* Ultimately, the Supreme Court found that there was no conflict of interest; however, its ruling was based on the facts that the derivative plaintiff "[was] not attempting to represent the interest of any other shareholders" and that he "[was] the only similarly situated shareholder." *Id.* These facts can be easily distinguished from those in *Waterhouse*, where the plaintiff was attempting to represent a number of other similarly situated shareholders in the derivative action. *Waterhouse*, 1991 WL 199480, at \*1. Specifically, the Supreme Court in *Hall* noted that "[b]ecause there is no evidence in the record to support a finding that [the plaintiff] is incapable of fairly representing the interests of the corporation in the derivative action while maintaining his individual suit, the existence of both is no reason to deny him standing." *Hall*, 957 S.W.2d at 540.

Here, Plaintiffs brought a derivative action on behalf of USC and its approximately 20,000 members. Unlike the facts in *Hall*, there is evidence in the record to support a finding that, due to their conflict of interest, Plaintiffs are incapable of fairly and adequately representing the interests of the members of USC. The record shows that on October 14, 2015, four days after Slaughter and Wilkins lost their election bids and Williams resigned from his position within USC, Plaintiffs formed USC II.[12] Soon after, a special meeting was held on November 28, 2015, during which delegates discussed the alleged embezzlement and misappropriation of funds by the directors of USC. After the meeting, it was determined that each lodge would adopt a resolution granting USC II fraternal recognition and seek membership therein, effectively separating themselves from USC. As of a March 18, 2016 allocation letter sent to USC II members by Michael Parris, a USC II representative, eight subordinate bodies of USC had recognized USC II and eight others had been taken under the control of USC II. Additionally, pursuant to an

---

[12] As referenced in a previous footnote, Plaintiffs formed the new corporation under the trademarked name "United Supreme Council of the Ancient Scottish Rite for the 33 Degree of Freemasonry, Southern Jurisdiction, Prince Hall Affiliated." This is similar to the trademarked name of USC: "United Supreme Council, 33 Degree of the Ancient and Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, Southern Jurisdiction of the United States."

undisputed affidavit submitted by Willie High Coleman, the acting Attorney General for USC, USC II has taken bank accounts, deposits, and securities from USC with an estimated value exceeding $100,000.00. Most significantly, in the March 18, 2016 allocution letter, Mr. Parris claimed that USC II had been established "in opposition to" the leadership of USC. We conclude that these actions exhibit an overriding antagonistic relationship between Plaintiffs and USC such that Plaintiffs cannot fairly and adequately represent the interests of the members of USC and, thus, lack standing. The resulting conflict of interest disqualifies Plaintiffs from maintaining a derivative action on behalf of USC pursuant to Tennessee Rule of Civil Procedure 23.06.

## V. CONCLUSION

For the foregoing reasons, the trial court's entry of summary judgment in favor of USC, dismissing all of Plaintiffs' claims against Defendants, is affirmed.

_____
ARNOLD B. GOLDIN, JUDGE